**J. B., In Re: D. T., Petitioner**

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2006.

Decided May 9, 2006.

---

Phillip O. Robertson, Altoona, for petitioner.

No appearance entered on behalf of respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

J.B. petitions for review of the Final Order on the Merits issued by the Secretary of the Department of Public Welfare (Secretary) denying his request to expunge an indicated report of child abuse filed by the Blair County Children & Youth Services (CYS) for physically abusing D.T., a person for whose welfare he was responsible. The Secretary reversed an order entered by the Bureau of Hearings and Appeals (Bureau) adopting the recommendation of the Administrative Law Judge (ALJ) that the indicated report of child abuse be expunged because CYS failed to meet its burden of proof under the Child Protective Services Law (Law).[1]

None of the parties challenge the facts as found by the ALJ. J.B. was the paramour of R.T., the natural mother of D.T., a male child born on June 9, 2002, to R.T. and W.S.J. J.B. resided in the same residence as R.T. and D.T. On August 25, 2003, R.T. picked up D.T. from the custody of R.L., his maternal grandmother. From the time D.T. left the home of R.L. until 4:00 a.m. on August 26, 2003, D.T. was only in the custody of J.B. and R.T. At 4:00 a.m. on August 26, 2003, R.T. left D.T. in the care and custody of J.B. so that she could attend a daily appointment at a methadone clinic. At that time, J.B. awoke but then went back to sleep.

J.B. claimed that he awoke later in the morning to find D.T. next to the power outlet with red feet, and because the power was out, assumed that the child was hit by lightning. J.B. and R.L. transported D.T. to the Altoona Hospital Emergency Room (Altoona Hospital). D.T. was diagnosed with relatively symmetrical deep partial thickness burns (second degree burns) on both feet and blisters on all of the skin from the ends of his toes past his ankles. Altoona Hospital treated D.T. with morphine and then transported him to the Western Pennsylvania Hospital Burn Trauma Unit where he was discharged on September 2, 2003. CYS investigated the matter on the day of the incident and questioned R.T. at Altoona Hospital about the early morning hours of August 26, 2003. Upon questioning, R.T. became very agitated and uncooperative, and implied that the injuries to D.T. were not done intentionally.

On August 27, 2003, CYS entered into a voluntary safety plan with D.T.'s maternal great grandmother, V.L., and maternal great aunt, V.U., which specified that no unsupervised contact was permitted between D.T. and J.B. or between D.T. and R.T. CYS subsequently filed an indicated report of child abuse against both J.B. and R.T. alleging physical injuries of burns and scalding. CYS filed an indicated report of

---

1. Section 6341(a)(2) of the Law, 23 Pa.C.S. § 6341(a)(2), states in pertinent part:

Any person named as a perpetrator ... in an indicated report of child abuse may, within 45 days of being notified of the status of the report, request the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter.

child abuse with the ChildLine Registry that named J.B. and R.T. as alleged perpetrators. J.B. requested that the indicated report be expunged and filed a request for an administrative hearing.

Before the ALJ,[2] J.B. testified that when R.T. got up at 4:00 a.m. to get ready for her appointment, he awoke and D.T. was sleeping beside him. J.B. stated that he was still somewhat sleepy but was pretty sure D.T. was still sleeping beside him when he went back to sleep. J.B. testified that R.T. usually left for her appointment within 30 minutes of 4:00 a.m., and he thought that on August 26, 2003, she was waiting for a ride to the methadone clinic either in the living room or outside. J.B. was not sure of the exact time R.T. woke up or actually left the residence on August 26, 2003. J.B. testified that he awoke that day at 5:00 a.m. or a little earlier and discovered D.T. crying and the power out in the residence. He stated that he woke up, lit a candle and went to check D.T.'s diaper, at which time he discovered D.T.'s injuries. J.B. testified that he called R.L. and they immediately took D.T. to Altoona Hospital. J.B. did not offer a specific explanation as to the cause of D.T.'s burns and stated that all he knew was that he had no involvement in inflicting them. On cross-examination, he was asked if he had a criminal record and he responded that he did not.

In opposition, CYS presented the expert testimony of Harvey Slater, M.D. (Dr. Slater), the director of the Western Pennsylvania Hospital Burn Trauma Unit and D.T.'s treating physician. Dr. Slater opined that D.T.'s burns appeared to be typical immersion scald burns and their severity was not consistent with the type of burns that result from a power outlet or wire.[3] Kirin Camberg (Camberg), a CYS caseworker who was involved in the initial stages of the case, also testified. Camberg testified that she did not have statements from either J.B. or R.T., and did not have any evidence indicating that J.B. helped cause the injuries. CYS also offered into evidence several photographs of D.T.'s injuries as well as photographs of the sinks and bathtub at the residence of R.T. and J.B.

CYS also presented records that J.B. was convicted in the state of Georgia by pleading *nolo contendere* to providing false identification documents in 1998, driving while his license was suspended in 1999, and theft in 1999.

The ALJ found that because of D.T.'s age at the time of the incident, he was too young and small to have been able to cause the injuries to himself by turning on a spigot and then climbing into a tub, kitchen sink or bathroom sink with scalding hot water. The ALJ found that the injuries were intentionally inflicted, were severe and caused D.T. great pain, and only J.B. or R.T. could have caused them. Because he lied on the stand as to whether he had been convicted of any other crimes, the ALJ found J.B.'s testimony not credible as it related to the events of August 26, 2003. Notwithstanding that she found J.B. not credible, the ALJ noted that Camberg could not provide any evidence that J.B. did anything through acts or omissions to cause the injuries, and the only evidence of CYS implicating J.B. was that D.T. was in the care of J.B. and R.T. who lived togeth-

2. The parties agreed that D.T. was not available to testify due to his age and inability to communicate. R.T. also did not testify at the hearing.

3. In his testimony, Dr. Slater indicated that the version of the events given by J.B. and R.T. was that D.T.'s feet were either burned by a power outlet or a severed phone cord or, alternatively, that the house was struck by lightning.

er at the time the injuries were suffered. Finding that there was no substantial evidence that J.B. abused D.T., the ALJ issued an opinion recommending that J.B.'s name be expunged from the ChildLine Registry. Based on the ALJ's recommendation, the Bureau ordered that J.B.'s name be expunged from the ChildLine Registry.

██ CYS requested reconsideration of that order which was granted by the Secretary. The Secretary subsequently reversed the Bureau because the ALJ had found J.B. not credible regarding the incident in that he lied about having a criminal record, and there was no countervailing evidence to overcome the presumption contained in 23 Pa.C.S. § 6381(d) that those responsible for the care of the child are responsible for their injuries. This appeal by J.B. followed.[4]

██ No one is disputing that during the early morning hours of August 26, 2003, D.T. suffered second degree burns on both feet as a result of someone intentionally immersing both of his feet and legs into scalding hot tap water for at least three or four seconds constituting child abuse as defined by the Act.[5] No one is disputing that independent substantial competent evidence that J.B was the party that caused the burns does not exist. Furthermore, all of the parties accept the facts as found by the ALJ. The only issue in this case is whether the presumption contained in 23 Pa.C.S. § 6381(d) serves as a basis for the Secretary to refuse to expunge a finding of indicated child abuse when there was no substantial evidence to support such a finding. That provision provides:

> Prima facie evidence of abuse.—Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.[6]

J.B. contends that the presumption created by the provision only relates to the *existence* of child abuse and is not equivalent to substantial evidence regarding the *identity* of the perpetrator of that abuse which he contends is required to be established for a finding of child abuse. CYS counters that the provision creates both a statutory presumption that the child abuse was committed and that the parent or a

---

**4.** Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or whether necessary facts are supported by substantial evidence. *Bucks County Children and Youth Social Services Agency v. Department of Welfare*, 808 A.2d 990 (2002).

**5.** The term "child abuse" includes "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." 23 Pa.C.S. § 6303(b). A "perpetrator" is defined as, "[a] parent of a child, person responsible for the welfare of a child, individual residing in the same home as the child, or a paramour of the child's parent who has committed child abuse...." 23 Pa.C.S. § 6303(a). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of function of any bodily member or organ." *Id.*

**6.** The presumption created in this provision applies equally to administrative expunction proceedings as well as court proceedings under 23 Pa.C.S. § 6381(a), which provides:

> General rule.—In addition to the rules of evidence provided under 42 Pa.C.S. Ch. 63 (relating to juvenile matters), the rules of evidence in this section shall govern in child abuse proceedings in court or in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information).

person responsible for the child is the one that inflicted those injuries.

While we have never addressed that issue, the Superior Court has done so many times, but first and most fully in *In Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019 (1993). As in this case, in *J.R.W.*, there was no dispute that the child suffered very serious injuries, but *J.R.W.* differed in that a declaration that the child was dependent was sought so that she could be removed from the home. To make a finding that a child is dependent because of abuse, abuse on the part of the parents must be established by clear and convincing evidence. 42 Pa.C.S. § 6341(c).[7] The trial court found that the child incurred serious bodily injuries while in the parents' care but, like in this case, it was unable to determine whether one or both of J.R.W.'s parents were the perpetrators of the abuse because apparently neither testified at the dependency hearing. Applying the presumption contained in 23 Pa.C.S. § 6381(d), it found that J.R.W. was abused by her parents and a "founded report"[8] of child abuse was filed against both parents. On appeal, the parents, among other things, challenged the founded report of child abuse arguing that the presumption was insufficient to establish that they were the abusers because that could only be established by clear and convincing evidence that one or the other of the parents caused the serious injuries to the child.

Finding that the General Assembly established a different evidentiary standard for finding child abuse by a parent or person responsible for the child's care, one in contrast to the overall standard for determining dependency under the Act, our Superior Court held that while it must be established by clear and convincing evidence that the child was physically abused in order for there to be a finding of dependency, its finding as to the abusers need only be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers, explaining:

> Prima facie evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case. There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the Act to establish child abuse. The Legislature has determined that the likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that prima facie evidence the custodian has caused the injury, either by acts or omissions, is all that is required. We find no defect in this reasoning. Such a standard provides maximum protection for the child victim or other children in the community who might be subject to similar abuse if the alleged abuser was not identified and permitted free access to the victim or other vulnerable children. It is not equivalent to a finding of guilt in a criminal proceeding which could result in deprivation of freedom. Thus the legis-

---

7. 42 Pa.C.S. § 6341(c) provides:
 If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

8. 23 Pa.C.S. § 6303 defines "Founded report" as "[a] report made pursuant ... if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused."

lature has balanced the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt the court, in its proceeding, must determine by clear and convincing evidence that the child was physically abused, its finding as to the abusers need only be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers.

While clear and convincing evidence was required in *J.R.W.* because it involved a dependency proceeding, and an "indicated report" [9] only required that substantial evidence be made out to establish as to who had the burden regarding the identity of the perpetrators, we agree with the Superior Court that 23 Pa.C.S. § 6381(d) created a presumption that the parents or those who were responsible for the child's welfare were the ones that inflicted the child abuse, and only the abuse itself had to be established in the case of an indicated child abuse by prima facie evidence. Of course, that presumption can be rebutted, like other statutory presumptions, with countervailing competent, substantial evidence. *See e.g.: City of Philadelphia v. Workers' Compensation Appeal Board (Sites)*, 889 A.2d 129 (Pa.Cmwlth.2005) (once a workers' compensation claimant proves that he or she is afflicted by an occupational disease, a rebuttable presumption that the injury arose in the course of employment exists; this presumption, though, may be rebutted by substantial competent evidence); *Steinberg v. Department of Public Welfare*, 758 A.2d 734 (Pa.Cmwlth.2000) (an applicant for medical assistance can overcome the regulatory presumption that assets have been transferred in order to be eligible for medical assistance by establishing that the individual intended to dispose of the assets for fair market value, the assets were transferred exclusively for a purpose other than to qualify for assistance, or the assets transferred for less than fair market value were returned to the applicant).

Because J.B.'s testimony was found not credible and there was no dispute that he was responsible for D.T.'s welfare, he failed to overcome with substantial evidence the statutory presumption created by 23 Pa.C.S. § 6381(d) that he was not one of the persons responsible, either through acts of commission or omission, for causing D.T.'s injuries. Accordingly, the decision of the Secretary reversing the Bureau's decision to expunge J.B.'s indicated report of child abuse to the Child-Line Registry is affirmed.

### *ORDER*

AND NOW, this *9th* day of *May*, 2006, the order of the Department of Public Welfare, dated July 8, 2005, at No. 21–04–008, is affirmed.

---

**9.** 23 Pa.C.S. § 6303 defines an "Indicated report" as "[a] child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following: (1) Available medical evidence. (2) The child protective service investigation. (3) An admission of the acts of abuse by the perpetrator."