**C.E., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.
Decided Feb. 12, 2007.

No appearance entered on behalf of petitioner.

No appearance entered on behalf of respondent.

Jason P. Kutulakis, Carlisle, for intervenor, Dauphin County Social Services for Children and Youth.

BEFORE: COLINS, President Judge, McGINLEY, Judge, LEAVITT, Judge.

OPINION BY Judge LEAVITT.

C.E. (Petitioner) petitions for review of an adjudication of the Department of Public Welfare (Department) denying Petitioner's request to expunge a report of indicated child abuse retained in the Department's ChildLine Registry. In this appeal, we consider whether the Administrative Law Judge (ALJ) erred in admitting the child victim's hearsay statement into the record without first making the findings prescribed by statute that are the precondition to admitting that hearsay statement. Concluding that the ALJ did fail to make the prescribed findings before admitting the hearsay, we vacate and remand for the reasons that follow.

The background to this appeal is as follows. In October 2002, Petitioner was living with his girlfriend, M.D., along with M.D.'s four-year-old son, W.D., and M.D.'s three-year-old daughter, D.D. On October 26, 2002, Dauphin County Social Services for Children and Youth (County) filed an indicated report of child abuse with Child-Line Registry, asserting that Petitioner had abused D.D.[1] Petitioner appealed to the Bureau seeking expunction of the report. The Bureau conducted several days of hearings, from February 2004 to July 2004, on Petitioner's request to expunge.

The first matter considered by the ALJ was whether D.D. was able to testify at the hearing. The ALJ conducted an *in camera* examination of D.D., at which the ALJ and attorneys for both the County and for Petitioner were present and also questioned her. The questions concerned such matters as D.D.'s knowledge of colors, whether some statements were right or wrong and her memory of events occurring in the past. Upon completion of the questioning, the ALJ declared that D.D. was incompetent to testify. Petitioner's counsel objected to this determination. Notes of Testimony, February 11, 2004, at 29–32. (N.T. ——). Thereupon, the hearing commenced but without the appearance of D.D.

Some of the facts in this case are not in dispute. D.D.'s mother, M.D., testified that she bathed D.D. on the evening of October 24, 2002, and dressed her on the morning of October 25, 2002. M.D. did not observe any injury to D.D.'s genital area in either encounter. At 11:00 a.m., on October 25, 2002, M.D. left for work, leaving Petitioner to babysit her children. Shortly thereafter, Petitioner and D.D. went to pick up W.D. from school, and all three returned home. M.D. returned home at approximately 4:30 p.m. and then left at 5:00 p.m. with W.D., leaving Petitioner and D.D. home alone until she returned at approximately 7:30 p.m. At 8:30 p.m., D.D.

---

1. The Department operates a statewide toll-free system for receiving reports of suspected child abuse, refers the reports for investigation and maintains the reports in the appropriate file. 55 Pa.Code § 3490.4. The Child-Line Registry is maintained in accordance with the Child Protective Services Law, 23 Pa.C.S. §§ 6301–6385. An "indicated" report of child abuse is made by the investigating agency when it determines that substantial evidence of the alleged abuse exists based on any of the following: available medical evidence, the child protective services investigation, or an admission of abuse by the perpetrator. 23 Pa.C.S. § 6303. A report can also be filed as "founded," in which case there has been a judicial determination that the child has been abused, or as "unfounded," in which case there has been neither a judicial nor an administrative finding of abuse. *Id.*

was picked up by D.D.'s father's girlfriend, K.H., and taken to her father's house.

At the father's house were K.H.; two other adults; D.D.; and three other children. The children played under adult supervision in an inflatable ball pit in the living room until D.D.'s father, Du.D., arrived home from work. D.D. complained to her father that her buttocks hurt, and when he looked at the source of the pain, he discovered blood on D.D.'s underwear. K.H. found a cut between D.D.'s vagina and rectum.

Du.D. and K.H. took D.D. to the emergency room at Holy Spirit Hospital where she was examined by Dr. Larry Paul. Dr. Paul noted a superficial cut between the vaginal and rectal areas that was approximately two and a half centimeters in length. The location of the laceration suggested sexual abuse; however, he testified at the hearing that he has seen injuries to the same area not caused by sexual abuse. Dr. Paul did not find any damage to the hymen.[2]

Four days later, D.D. was examined at the Children's Resource Center (CRC), a center that provides service to children who are suspected of being the victims of abuse. Dr. Earl Greenwald, medical director of CRC, testified that the examination of D.D. conducted by him and by a nurse practitioner revealed a several day old tear between the rectum and the vagina. A videotape showed a tear of the hymen with a healed cleft. He believed the healed cleft indicated that an object had entered the vagina. Dr. Greenwald felt that D.D.'s injuries were consistent with sexual abuse and were not accidental.

Susan Kolanda, an employee of the child abuse protection unit of the Dauphin County District Attorney's Office, testified that during Dr. Greenwald's examination of D.D., the child could be heard screaming and crying in the reception area, where Petitioner was waiting. Ms. Kolanda, who was also in the reception area, heard Petitioner say, in response to D.D.'s cries, that D.D. did not like it when people touched her "down there." N.T. 256.

On November 15, 2002, Debra Bauer interviewed D.D. at CRC, and her interview was videotaped. Ms. Bauer testified that the videotape fairly and accurately depicted her interview of D.D., and it was admitted into evidence. In the videotape, D.D. used the term "coochie," which she identified by pointing to the vaginal area of a doll. D.D. stated that Petitioner touched her coochie on the inside under her clothes; that he hurt her more than one time; that on at least one occasion, the touching occurred in the bathroom while her mother was at work; and that Petitioner told D.D. not to tell. In response to Ms. Bauer's suggestions about blood, D.D indicated that Petitioner's touching had caused D.D. to bleed.

Melissa McDermott Lane, a clinical social worker for the State of Maryland, testified on behalf of Petitioner. She reviewed D.D.'s videotaped interview and expressed some concerns about the way it was conducted. For example, she noted that the interviewer never tested D.D. to see if she knew how to use prepositions correctly.[3] Ms. Lane was particularly concerned about the interviewer's mention of blood, which was too suggestive. Ms. Lane stated that she would not have conducted the interview the way Ms. Bauer

---

2. The next day, D.D. was also examined at Harrisburg Hospital. The records of that examination were not offered into evidence.

3. She explained that children of that age do not understand the difference between "under" and "over."

did, but she did not opine expressly that the tape was unreliable.

Dr. Scott Krugman also testified on behalf of Petitioner. He reviewed D.D.'s medical records from Holy Spirit Hospital and from the CRC, as well as the videotape of D.D.'s examination at the CRC. He opined that these records did not contain definitive evidence of child abuse. Dr. Krugman stated that the videotape did not confirm a traumatic injury to D.D.'s hymen; he did not see a "healed" cleft and opined that the abnormality noted by Dr. Greenwald was probably structural. He also opined that D.D.'s examination should have been done in the knee chest position in order to determine if the hymen was damaged, but it was not. Finally, Dr. Krugman stated that the laceration D.D. sustained could have occurred in the absence of sexual abuse.

Petitioner testified. He categorically denied that he sexually abused D.D. or had ever handled her in an inappropriate fashion. Petitioner denied making the remark overheard by Ms. Kolanda or talking to anyone in the reception area. He stated that D.D. jumped off a bed on October 25, 2002, and expressed the thought that this event might have caused her injury.

The ALJ accepted the medical opinions of Dr. Greenwald over those of Dr. Krugman and did not find Petitioner credible. The ALJ found D.D.'s statements in the November 15, 2002, videotaped interview

to be credible and reliable. Further, he found that credible medical evidence corroborated D.D.'s hearsay statements. That evidence, together with Petitioner's comment overheard in the reception area of the CRC,[4] and Petitioner's opportunity to commit the injury that occurred on October 25, 2002, led the ALJ to conclude that Petitioner had sexually abused D.D.

∎ The ALJ recommended that Petitioner's expunction request be denied. On March 9, 2005, the Bureau adopted the ALJ's recommendation as its final order. Petitioner filed an application for reconsideration, which was granted by the Secretary of Public Welfare. However, on January 12, 2006, the Secretary affirmed the Bureau. Petitioner then sought this Court's review.[5]

∎ On appeal, Petitioner presents four main issues for our consideration. First, he contends that the ALJ erred in finding D.D. unavailable to testify and then admitting D.D.'s hearsay statements. Second, he argues that this improper admission of D.D.'s hearsay statements, over Petitioner's objection, violated his constitutional right to due process. Third, he argues that the ALJ erred in finding that D.D.'s hearsay statements were corroborated by medical evidence. Fourth, he asserts that the Department's order denying expunction is not supported by substantial evidence because the County's investigation was incomplete as it did not consider the

4. As noted, Petitioner denied making the remark. Petitioner's counsel asserted in any case the remark, which was found by the ALJ to have been made, did not support an inference that Petitioner abused D.D. At best, the remark merely stated the obvious, given D.D.'s crying and screaming.

5. This Court's scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are sup-

ported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *E.D. v. Department of Public Welfare,* 719 A.2d 384, 387 (Pa.Cmwlth.1998). Substantial evidence, for purposes of child abuse expunction proceedings, is defined as "evidence which so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable inferences drawn therefrom." *Id.* (internal citations and quotations omitted).

circumstances of the children playing in the ball pit on the evening of October 25, 2002.

We begin with Petitioner's main argument, which is that D.D.'s videotaped interview should not have been admitted. Such evidence, if reliably recorded and conducted, can be admitted where the victim testifies in person at the hearing. It may be admitted even without the child's live testimony, where the tribunal finds that appearing in person would cause the child distress to a degree that the child's ability to communicate would be substantially impaired. Here, the ALJ made no such finding and, thus, Petitioner contends it was error for the ALJ to admit D.D.'s videotaped interview.

The County counters that D.D.'s hearsay statements were correctly admitted. The ALJ questioned D.D. in an *in camera* hearing, and decided that D.D. was incompetent. The County concedes that the ALJ did not use the "magic words" that testifying would cause D.D. emotional harm. However, the County argues that this was implicit and, therefore, the ALJ's decision to admit the videotaped interview should not be overturned.

■ In an expunction hearing, the out-of-court statement of a child victim of sexual abuse can be admitted into evidence in certain circumstances. Those circumstances are established by following Section 5986 of the Judicial Code, which applies to juvenile dependency hearings. *A.Y. v. Department of Public Welfare*, 537 Pa. 116, 126, 641 A.2d 1148, 1153 (1994).[6] However, our Supreme Court has directed that 42 Pa.C.S. § 5986 should also be followed where a child's videotaped testimony is proffered in an expunction hearing brought under the Child Protective Services Law.

Under Section 5986, a child's hearsay statements are admissible if they are reliable and the child testifies. If the child does not testify, then the child must be found unavailable by reason of the extreme emotional distress that testifying would cause and thereby render the child unable to communicate reasonably. The Judicial Code states as follows:

(a) General rule.—A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile mat-

---

**6.** The Pennsylvania Supreme Court has held that:

1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. § 5986, and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

2. Hearsay testimony in conjunction with admissible corroborative evidence of the acts in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

a) the statement was accurately recorded by audio or video equipment;

b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

*A.Y. v. Department of Public Welfare*, 537 Pa. 116, 126, 641 A.2d 1148, 1153 (1994) (emphasis in original).

ters), involving that child or other members of that child's family, if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and *circumstances of the statement provide sufficient* indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) *is found by the court to be unavailable* as a witness.

(b) Emotional distress.—In order to make a finding under subsection (a)(2)(ii) that *the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child* as a witness *will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate.* In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S. § 5986 (emphasis added).

The only appellate case to construe 42 Pa.C.S. § 5986 is *In the Interest of Tina K.*, 390 Pa.Super. 94, 568 A.2d 210 (1989). The Superior Court explained that an individual accused of abuse has a constitutional right to confront witnesses against him. *Id.* at 213. It construed the hearsay exception in 42 Pa.C.S. § 5986 to require the trial court to make the express finding "that the actual appearance of the child as a witness would cause such trauma as would harm the child." *Id.* at 214. Otherwise, the child's hearsay statements should be inadmissible if the child does not testify. *Id.* at 215. Since *Tina K.*, 42 Pa.C.S. § 5986 has been amended to include subsection (b). It may not be clear under the present version of Section 5986 that harm to the child is the standard of unavailability.[7] However, the standard of unavailability remains a high one.

Early in her questioning, D.D. stated that she was not afraid of Petitioner, that she felt good and that she was not afraid to be at the hearing. N.T. 9–10. When asked how she would feel about being asked questions if Petitioner were present, she responded, "I would feel like crazy." N.T. 12. D.D. was also asked numerous other questions about colors, past events and her knowledge of the difference between giving right answers and giving wrong answers. In the course of this questioning D.D. stated that "I think something is making me crazy," indicated that her stomach hurt, and at two different points asked to use the restroom. N.T. 20, 27. However, D.D. was apparently ill with a cold, and there was no follow-up questioning or discussion by the ALJ as to why she felt "crazy," why her stomach hurt or

---

7. During the hearing, but before the ALJ issued his recommendation, Section 5986 of the Judicial Code, 42 Pa.C.S. § 5986, was amended by the Act of July 15, 2004, P.L. 736, No. 87, effective immediately. Previously, Section 5986(b) read, in relevant part, as follows:

(b) Emotional Distress.—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence present-

ed to it, that testimony by the child as a witness will result in the child suffering serious emotional distress **such that the child cannot reasonably communicate.** (emphasis added). Both parties use the 2004 language requiring "substantial" impairment to the child's ability to communicate, and so there does not appear to be an issue as to whether we should apply the 2004 version of Section 5986 in this case.

why she needed restroom breaks. In addition, there was no testimony offered by any adult such as a parent, physician, therapist or social worker that D.D. would experience "serious emotional distress" if she were to testify. 42 Pa.C.S. § 5986.

At the conclusion of D.D.'s questioning, the ALJ declared D.D. incompetent to testify because she was only four years old; her memory did not go back to October 2002; and she did not seem to understand the importance of giving a factually correct answer to a question. The ALJ explained as follows:

> At this point, I'm not satisfied that the child is competent to testify, and I'm going to declare that the child is not competent to testify in this matter based upon the fact that—based upon the child's responses today. She certainly could remember back to last Christmas; however, the child's memory did not go much beyond that. She's a child of four years of age. *I'm not sure that the child appreciated—she certainly could distinguish between—I asked her to distinguish whether something was a certain color,* and she could distinguish the color and she could tell you whether it was right or wrong. However, I'm not sure *the child—if she has the capacity at this point to understand why she*

*needs to give correct responses,* or the right responses or wrong responses. So for all those reasons, I'm going to declare that the child's not competent to testify.

N.T. 31–32 (emphasis added). Because D.D. was found to be an incompetent witness, her videotaped interview was admitted. The ALJ did not explain why, if she did not have the capacity to give right or wrong answers at age four, D.D. did have this capacity at age three when the videotaped interview was conducted.

■ Witness competency is a relevant inquiry in every proceeding.[8] However, it is not dispositive of the question here, which was whether to admit the witness' hearsay statement and excuse the witness from testifying. Under Section 5986, the child will be excused from testifying where to do so would "result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate." 42 Pa.C.S. § 5986. The ALJ's findings do not relate to that standard.[9] This is not, as the County argues, a mere failure by the ALJ to use the "magic words" in 42 Pa.C.S. § 5986. We have carefully reviewed the ALJ's finding, and it cannot be construed to mean that if D.D. testified, she would

---

8. In evaluating the competency of a child witness, a court is guided by the following principles:

> Competency of a witness is presumed and the burden falls upon the objecting party to demonstrate incompetency. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency.

*Commonwealth v. McMaster,* 446 Pa.Super. 261, 666 A.2d 724, 727 (1995) (citations omitted).

> The required inquiry must determine whether the child possesses (1) such capacity to communicate, including as it does

both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id.*

9. Petitioner also briefly argues that the ALJ improperly admitted D.D.'s out of court statement because the ALJ did not discuss on the record whether the statement was relevant and had sufficient indicia of reliability, as required by 42 Pa.C.S. § 5986(a)(1). Based on our disposition of the case, we need not address this argument.

have suffered emotional distress to the degree that it would *substantially* impair her ability to communicate. Indeed, the record is devoid of any evidence, such as testimony from D.D.'s mother or from a mental health professional, about how the act of testifying would have affected D.D. The ALJ found that other factors, such as her age, impaired D.D.'s ability to communicate truthfully but these factors are not relevant under 42 Pa.C.S. § 5986. The relevant factor is whether testifying would cause the witness emotional distress to the extent that her ability to communicate would be substantially impaired.

Because there was never a preliminary determination made that D.D. was unavailable as a witness under the 42 Pa.C.S. § 5986 standard, we must vacate the order denying expunction and remand the matter to the Department.[10] On remand, the ALJ should conduct a new inquiry into D.D.'s availability to testify before deciding whether to admit the videotaped interview.[11] If she is available, D.D.'s hearsay statements may then be properly considered by the ALJ. If she is not available to testify, the ALJ must make the findings required in 42 Pa.C.S. § 5986(b) before admitting the videotape. In either case,

the ALJ must issue a new decision on the merits of Petitioner's expungement request.

■ As a final matter, we address the contention by the County that the presumption found in 23 Pa.C.S. § 6381(d)[12] can serve as a basis to refuse to expunge the finding of indicated child abuse. This presumption, the County argues, can serve as an alternate basis to affirm the Department's refusal to expunge Petitioner's record of indicated child abuse. In support, the County directs our attention to *J.B., In Re D.T., v. Department of Public Welfare,* 898 A.2d 1221, 1226 (Pa.Cmwlth.2006). In *J.B.,* this Court held that 23 Pa.C.S. § 6381(d) created a presumption that the parents or those responsible for the child's welfare were the ones that inflicted the child abuse, and only the abuse itself had to be established in the case of indicated child abuse by *prima facie* evidence.[13] We disagree that the presumption provides an alternate ground for affirming the Department's adjudication.

■ First, this issue has been waived because the County did not raise this presumption in the hearing before the ALJ. Second, it does not apply given the facts in

---

10. Section 706 of the Judicial Code provides that:
>  An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.
>  42 Pa.C.S. § 706.

11. *See, e.g., School District of Philadelphia v. Workers' Compensation Appeal Board (Washington),* 723 A.2d 1087 (Pa.Cmwlth.1999) (vacating and remanding for the taking of additional evidence, if necessary, and for the Workers' Compensation Judge (WCJ) to make additional necessary findings and conclusions in accordance with the law).

12. 23 Pa.C.S. § 6381(d) provides:
>  (d) Prima facie evidence of abuse-Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

13. In *J.B.,* the child was found to have second degree burns on his feet and ankles while in the care of his mother's paramour. The paramour was determined to have committed the child abuse because he did not rebut the presumption that, as the child's caretaker, he was the one that committed the abuse.

this case. Although Petitioner was responsible for D.D.'s welfare for a significant amount of time on October 25, 2002, he was not the only adult responsible for D.D. that day. Several other adults supervised D.D. for a substantial period of time prior to the discovery of the perineal cut. In addition, the first doctor to examine D.D. did not find an injury to the hymen; that injury was not identified by Dr. Greenwald until October 29, 2002. Therefore, even if the issue had been preserved, the presumption found in 23 Pa.C.S. § 6381(d) cannot be applied.[14]

**ORDER**

AND NOW, this 12th day of February, 2007, the order of the Department of Public Welfare dated January 12, 2006, in the above captioned case is hereby vacated, and this case is remanded to the Department of Public Welfare for a determination on whether D.D. is available to testify under 42 Pa.C.S. § 5986, as set forth in the attached opinion.

Jurisdiction relinquished.

14. Based on our disposition of the case, we will not address the remainder of Petitioner's arguments.