**B.B. (B.L.), Petitioner**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 9, 2010.

Decided April 13, 2011.

Joseph R. Viola, Philadelphia, for petitioner.

Michael Angelotti, Assistant City Solicitor, Philadelphia, for intervenor Philadelphia Department of Human Services.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

B.B. (also known as B.L.), an adult, petitions for review of the final order of the Department of Public Welfare (DPW) upholding the December 10, 2009, order of the Bureau of Hearings and Appeals (Bureau) denying B.B.'s appeal from two indicated reports of child abuse filed with the Childline Registry by Philadelphia County Department of Human Services (DHS) naming B.B. as a perpetrator of child abuse pursuant to the Child Protective Services Law (CPSL).[1]  We reverse.

B.B. is the paternal grandmother, and periodic caregiver, to the two subject children of the instant matter; M.B. and C.B., who were both born on May 2, 2008.  The

---

1. 23 Pa.C.S. §§ 6301–6386.

following facts are taken from the Administrative Law Judge's (ALJ) Adjudication.

On August 28, 2008, an oral report of possible physical abuse was made regarding an incident involving M.B. An investigation ensued by the DHS, which resulted in an indicated report[2] of child physical abuse against B.B. being listed on the Childline Registry on October 22, 2008 under number 51-0159025 (hereinafter, Report 25). On November 13, 2008, B.B. requested (through her attorney) a hearing before the Bureau to rule on B.B.'s request to expunge Report 25.

On October 2, 2008, an oral report of possible physical abuse was made regarding an incident involving B.B. and C.B. An investigation ensued by the DHS, which resulted in an indicated report of child physical abuse against B.B. being listed on the Childline Registry on November 18, 2008 under number 51-0159498 (hereinafter, Report 98). On December 11, 2008, B.B. requested (through her attorney) a hearing before the Bureau to rule on B.B.'s request to expunge Report 98.

The two expungement requests were thereafter consolidated, and a hearing held thereon before the ALJ. Due to their ages, neither child testified. All parties appeared at the hearing, and B.B. was represented by counsel.

In his Findings of Fact, the ALJ characterized the parties' stipulations as follows:

16. The parties stipulated that Kathye Torrisi is a Certified Practical Nurse. ( [Notes of testimony] NT-10)

17. The parties stipulated that Ms. Torrisi would testify that she examined the medical records generated by St. Christopher's Hospital, and she concluded that the injuries sustained by both subject children were consistent with characteristics of child abuse of an infant. (NT-11)

18. The parties stipulated that C.B. suffered three fractured ribs, and M.B. suffered a subdural hemorrhage of the brain. (NT-11)

19. The parties stipulated that Dr. McColgan examined the records, and her opinion as an expert is that the injuries to both C.B. and M.B. are consistent with child abuse. (NT-12)

ALJ Adjudication at 5. The ALJ further summarized the testimony of Dawn Johnson, the social worker assigned to investigate the two reports of abuse. Ms. Johnson interviewed the children's father, the father's paramour, and their paternal grandfather, all of whom were cooperative and open. Ms. Johnson's multiple attempts to interview B.B. were met with hesitance, accompanied by a request that B.B. be allowed to record the interview, and were ultimately denied by B.B. due to her request that she first be allowed to speak with her attorney.[3]

The ALJ also found the following facts. In the week before the incident leading to

---

2. An "indicated report" is defined as:
A child abuse report made pursuant to this chapter if an investigation by the county agency or the [DPW] determines that substantial evidence of the alleged abuse exists based on any of the following:
(1) Available medical evidence.
(2) The child protective service investigation.
(3) An admission of the acts of abuse by the perpetrator.

Section 6303(a) of the CPSL, 23 Pa.C.S. § 6303(a).

3. We note that the record is bereft of any evidence that B.B. was ever precluded from meeting with an attorney prior to any investigatory interview, or at any other time; additionally, the record is bereft of any evidence that B.B. had, or attempted to hire, an attorney during the time of the interview requests.

the infants' injuries, the children had been in B.B.'s care. During the time period during which the medical evidence showed that the children could have been injured, they were in the care of B.B., her husband, a baby sitter, their father, and their father's paramour. During the week in question, B.B. babysat the children with her husband (the children's paternal grandfather) from Monday (August 25, 2008) morning until 5:00 p.m., and on Tuesday morning overnight until Wednesday (August 27, 2008) at 5:00 p.m. The children's father credibly testified that both children cried excessively when he picked them up from B.B.'s care on Wednesday evening. On Thursday, August 28, 2008, M.B.'s symptoms were serious enough that his father took him to the hospital, where his head injury was discovered. On August 30, 2008, C.B.'s father took him to the hospital for a "well baby check" at which time the healing rib fractures were discovered.

In his Adjudication, the ALJ set out the applicable law in relation to the expungement proceedings, including the law applicable to the parties' respective burdens:

> To prevail in the instant case, it is the burden of [DHS] to prove by substantial evidence that child abuse of M.B. and C.B. in violation of the [CPSL], Title 23 Pa.C.S.A. Chapter 63, occurred and that [B.B.] was the perpetrator of such abuse.

ALJ Adjudication at 11. The ALJ further noted:

> 23 Pa.C.S. 6381(d) [4] creates a presumption that the parents or those who were responsible for the child's welfare were

the ones that inflicted the child abuse, and only the abuse itself had to be established in the case of an indicated child abuse by prima facie evidence. *J.B. in re D.T., v. Com. Dept. of Public Welfare*, 898 A.2d 1221 (Pa.Cmwlth. 2006).

*Id.*

The ALJ further summarized the father's account of the children's caretakers during the period at issue, and further recounted the father's testimony that on or about Saturday, August 23, 2008, he tripped over C.B. in a stairwell and fell while carrying M.B. The ALJ noted that the stipulated medical reports indicated that this trip and fall were too remote in time to have caused the injuries at issue, and that the trip and fall therefore had no bearing on the abuse in the matter. The ALJ further noted the stipulated medical testimony that the children were injured at the same time, and that they could have taken up to three days to become symptomatic. The ALJ noted that no evidence existed of any injury symptoms when the children were dropped off and picked up at B.B.'s on August 25, 2008, but that the father noticed the symptoms on August 28, 2008, within the three-day window for M.B.'s symptoms.

Finally, the ALJ concluded:

> [B.B.] and the children's grandfather were responsible for [the children's] welfare within the injury occurrence window opined by the experts. I conclude that [B.B.] was one of two persons caring for the children when they were injured.

---

4. Section 6381(d) of the CPSL states:
   (d) Prima facie evidence of abuse.—Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.
   23 Pa.C.S. § 6381(d).

In this case, abuse has been established by competent stipulation of medical evidence ... 23 Pa.C.S. 6381(d) creates a presumption that ... those who were responsible for the child's welfare were the ones that inflicted the child abuse, and only the abuse itself had to be established in the case of an indicated child abuse by prima facie evidence. *J.B. in re D.T., v. Com. Dept. of Public Welfare,* 898 A.2d 1221 (Pa.Cmwlth. 2006).

ALJ Adjudication at 13. Concluding that no competent evidence of record rebutted the presumption, or established that B.B. "was not one of the persons responsible for the injuries to the children," the ALJ recommended by order dated September 11, 2009, that B.B.'s appeals seeking expungement be denied. *Id.* The Bureau adopted the ALJ's recommendation in its entirety by order dated December 10, 2009. B.B. now petitions for review of the Bureau's order.[5],[6]

▇ Our review of a request to expunge a child abuse report is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial evidence. *C.S. v. Department of Public Welfare,* 972 A.2d 1254 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 604 Pa. 708, 987 A.2d 162 (2009).

▇ The foundational inquiry into whether an indicated report of child abuse should be expunged or maintained is whether the report is accurate. *K.J. v. Department of Public Welfare,* 767 A.2d 609 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 567 Pa. 750, 788 A.2d 381 (2001). In the matter *sub judice,* DHS has

the burden of establishing by substantial evidence that an indicated report of child abuse is accurate. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare,* 808 A.2d 990 (Pa.Cmwlth.2002). Substantial evidence is evidence which outweighs inconsistent evidence, and evidence which a reasonable person would accept as adequate to support a conclusion. Section 6303(a)(1) of the CPSL, 23 Pa.C.S. § 6303(a)(1). In an action to expunge an indicated report of child abuse, the Bureau is the ultimate fact finder. *D.T. v. Department of Public Welfare,* 873 A.2d 850 (Pa.Cmwlth.2005).

B.B.'s arguments have been reordered in the interests of clarity. We first address B.B.'s argument that the Bureau erred in disregarding certain testimony presented before the ALJ. In that proceeding, the children's father testified that in the days preceding the injuries at issue, the father tripped over one child in a stairwell and in the fall that ensued, bumped the other child's face or head against a stairwell railing. B.B. emphasizes that the DHS investigator in this case testified, when asked if the knowledge of the father's trip and fall would have changed her report in this matter, that "If I had known about it, a lot would have changed. But that information was withheld from me." Certified Record (C.R.), Transcript of Proceedings (Tr.) at 19. B.B. now argues that the Bureau errantly disregarded that evidence, and erred in failing to conclude that the children's injuries were sustained in that trip and fall. We disagree.

As noted above, the Bureau is the ultimate fact finder, and the ultimate arbiter of the weight to be assigned to the evi-

---

**5.** DHS filed an Application to Intervene with this Court, which was granted by order dated March 24, 2010.

**6.** DPW has not filed a brief with this Court in the instant matter.

dence presented. *D.T.* It is axiomatic that in our appellate function, we will not disturb credibility determinations or the weight so assigned. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 977 A.2d 1254 (Pa.Cmwlth.2009). That B.B. would understandably prefer the weight of the evidence to have been assigned a higher value, or that the credibility of the father have been discredited, is of no moment to the execution of those functions by the Bureau. As such, B.B.'s arguments on this issue are without merit.

■ B.B. also argues that the medical testimony stipulated to in this matter by both parties is not substantial enough to support a denial of B.B.'s expungement petition. The record shows that the two stipulations targeted by B.B. were stipulations as to what two medical experts would testify to in this matter. The stipulations were characterized before the ALJ as testimony that the specific injuries suffered by the two children in this case were injuries consistent with the characteristics of child abuse, given by two medical experts who were familiar with the type of medical records generated in this matter, familiar with the actual medical records of the two children herein, and familiar with the review of such records and injuries in relation to their categorization as consistent with child abuse. C.R., Tr. at 3–4. In addition to arguing the substantiality of these matters, B.B. further asserts that the stipulations are impermissible hearsay.

B.B. has waived both of these arguments. The record as a whole shows that, when the stipulations were offered into evidence, B.B. made no objections thereto. C.R., Tr. at 3–4. Further, the entirety of the record shows that no subsequent challenge was made by B.B. regarding the hearsay nature of the stipulations, or regarding the substantiality thereof. The record shows, in fact, that B.B. failed to challenge any aspect of the stipulations' entry into the record in any way during the entirety of the proceedings.

■ Issues not raised in administrative expungement proceedings are waived and cannot be considered for the first time in a subsequent judicial appeal. *S.T. v. Department of Public Welfare*, 681 A.2d 853 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 547 Pa. 747, 690 A.2d 1165 (1997). As such, B.B. has waived these issues.

B.B. next argues that the Bureau erred in applying the presumption of Section 6381(d) of the CPSL, 23 Pa.C.S. § 6381(d), to B.B. where the undisputed facts as accepted by the ALJ show that B.B. was not the only adult entrusted with the children's care in the days that preceded the discovery of the injuries at issue. The Bureau argues that the presumption can be applied to one of two or more parties entrusted with a child's care during the medically established window of opportunity for a given injury or injuries.

It is beyond dispute under the facts *sub judice* that during the period in which the credible medical evidence establishes that the injuries were sustained to the two children, multiple parties were responsible for their care and well-being. The ALJ found as fact:

27. During the interval in where the children could have been injured, they were in the care of [B.B.], [B.B.'s] husband, a baby sitter, their father and their father's paramour. (NT–34, and 36)

\* \* \*

30. [B.B.] babysat the children *with her husband*, the children's paternal grandfather during the week in question on Monday from morning until 5:00 p.m., on Tuesday from morning, over-

night until 5:00 p.m. on Wednesday evening. (NT–51)

ALJ Adjudication at 5–6 (emphasis added). The ALJ further concluded:

> [B.B.] and the children's grandfather were responsible for [the children's] welfare within the injury occurrence window opined by the experts. *I conclude that [B.B.] was one of two persons caring for the children when they were injured.*

*Id.* at 13 (emphasis added).

■ Upon review, we conclude based on our reading of the express and unambiguous language of Section 6381(d) of the CPSL, that the presumption embodied therein cannot be applied where more than one individual was entrusted with a child's care during the period in which medical evidence shows the injuries were inflicted. On its own, the language of Section 6381(d) resolves this issue. Therein, the General Assembly in setting forth the presumption refers only to the "parent or other person" responsible for the welfare of the child. 23 Pa.C.S. § 6381(d). The clear use of the singular tense therein cannot be read as an accident, and cannot therefore be read to apply to any situation in which the presumption is sought to be applied to more than one "parent or person."[7]

It is well settled under the Statutory Construction Act of 1972 (Statutory Construction Act) that the plain language of the statute is the best indicator of the General Assembly's intent. Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b). "The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a). "When the words of a statute are clear and unambiguous, this Court cannot disregard them under the pretext of pursuing the spirit of the statute." *Middletown Township v. Lands of Stone*, 595 Pa. 607, 616, 939 A.2d 331, 337 (2007) (citing Section 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921).

The plain language of Section 6381(d) applies that Section only to a singular parent or person, an intended application made all the more clear by the exclusion of the plural of the word "parent" in a linguistic arena wherein both "parent" and "parents" cannot logically be read to not both have been considered by the General Assembly as a matter of common sense in parental issues, in addition to the plain meaning of the tense used.

Notwithstanding, we are also cognizant of the rule of statutory construction stating that "[t]he singular shall include the plural, and the plural, the singular." Section 1902 of the Statutory Construction Act, 1 Pa.C.S. § 1902. However, a review of the interrelation of two sections of the CPSL reveals that the General Assembly intended the singular use of parent or person over the plural within Section 6381(d). Section 6303 of the CPSL defines an "indicated report" as a report where "substantial evidence" of abuse exists; that is, where there exists "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303. Thus, as support for an indicated report as so defined, the *prima facie* evidence referenced in Section 6381(d) as

---

7. Although it is not the case under the instant facts, we do not necessarily hereby hold that the presumption cannot be used in multiple caregiver situations where additional evidence, beyond the mere application of the presumption standing alone, can be used to narrow the presumption's application to only one person or parent. Such is not the case under the evidence presented here, or under the facts as found by the Bureau in this matter.

the trigger for the presumption therein must be "substantial evidence" by definition, if it is to function as statutorily defined *prima facie* evidence (evidence good and sufficient on its face, and sufficient to establish a given fact). Applied to an instance where, as here, the evidence shows that two or more persons cared for a child at some point during the window of opportunity in which the medical evidence shows that the child was abused, a reasonable person would not accept such evidence as adequate to conclude that *each* or *all* of the caregivers actually abused the child.

Accordingly, we hold that the only reasonable statutory construction of Section 6381(d) leads to the sole conclusion that it is applicable only to one caregiver, absent some additional evidence that would serve to eliminate from consideration all but one caregiver (or, additional evidence that would implicate more than one or all caregivers).[8],[9]

As such, the Bureau in this matter erred as a matter of law in applying the presumption of Section 6381(d) of the CPSL where it was found that the children herein were, during the period in which the medical evidence shows the children were abused, in the care and/or custody of more than one caregiver.

We reverse.

President Judge LEADBETTER dissents.

### ORDER

AND NOW, this 13th day of April, 2011, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated December 10, 2009, at Docket No. 21–09–205, is reversed.

---

**8.** On this issue, both parties cite to precedents of this Court, and to those of the Superior Court in dependency proceedings, that to varying degrees support their respective arguments. However, several of the cited cases only discuss the relevant issue in *dicta*. Accord *J.W. v. Department of Public Welfare*, 9 A.3d 270, 272–273 (Pa.Cmwlth.2010) ("presumption of Section 6381(d) does not apply in situations where a child was in the care of multiple persons during the period when the abuse occurred and it is not possible to determine which person actually abused the child."); *C.S.* (matter remanded where the Bureau held no hearing on expungement petition, but instead relied upon prior dependency proceeding in family court that relied upon Section 6381(d) presumption, and where family court expressed uncertainty as to whether expungement petitioner had abused the child, and where several other individuals were caregivers to the child before the child began to exhibit symptoms of abuse); *C.E. v. Department of Public Welfare*, 917 A.2d 348 (Pa. Cmwlth.2007) (presumption embodied in Section 6381(d) does not apply where petitioner seeking expungement was not the only adult responsible for the child's care during the

period of time prior to the discovery of abuse).

**9.** We acknowledge our opinion in *J.B., In Re: D.T. v. Department of Welfare*, 898 A.2d 1221 (Pa.Cmwlth.2006). Therein, a child was found to have been abused while in the care of his mother and her paramour, J.B. Both were named as abusers, but only J.B. sought expungement thereafter. This Court applied the Section 6381(d) presumption therein, and allowed J.B.'s name to remain on the Childline Registry, where J.B. was found to have not credibly rebutted the presumption. That opinion focused primarily upon the difference between a dependency proceeding's clear and convincing evidentiary standard, and the lesser substantial evidence standard required to establish an indicated report of child abuse. In this Court's *en banc* opinion in *C.S.*, this Court required that a remand for an expungement proceeding would require substantial evidence beyond the *prima facie* evidence triggering the Section 6381(d) presumption that the petitioner in particular, one of several caregivers, abused the child; that holding implicitly overrules the panel decision in *J.B.* See *J.W.*, 9 A.3d at 273 n. 2.