**K.J., Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2000.
Decided Jan. 10, 2001.
Reargument Denied March 19, 2001.

---

**17.** One or more of the taxing bodies might have opted *not* to participate in the tax incre-ment district.   53 P.S. § 6930.5(a)(7).

James J. Riley, Pottsville, for petitioner.

Myra W. Sacks, Harrisburg, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

K.J. appeals from the final order of the Secretary of the Department of Public Welfare (DPW) affirming a decision of the Bureau of Hearings and Appeals (BHA), which in turn adopted an Adjudication and Recommendation by a hearing officer to deny K.J.'s request to expunge an indicated report, filed against him, of sexual abuse of a child. We affirm.

The Schuylkill County Children and Youth Services (CYS) received a report of suspected child abuse occurring in September 1995, involving K.J. and B.R., a female minor born in December 1988. Gwendolyn Schock, a child abuse investigator for CYS, interviewed B.R., her parents, K.J., and a family friend who disclosed the alleged abuse. After determining that substantial evidence supported the allegations, an indicated report of child abuse was filed against K.J. No criminal charges were brought against K.J., although the police investigated the matter.

K.J. appealed the indicated report filed against him, and a hearing was held. Testifying at the hearing were Ms. Schock, B.R., K.J., and a character witness for K.J. Also introduced at the hearing was a transcription of an audiotaped interview of B.R. by Ms. Schock taken on February 14, 1996, which interview formed the principal basis of the indicated report of child abuse. The hearing officer found the following relevant facts. K.J. was a friend of B.R.'s father and had babysat for B.R. and her sister on a number of occasions. On the day of the incident, K.J. and his wife and infant child babysat for B.R., her sister and one other child at K.J.'s house. K.J.'s wife and child, B.R.'s sister, and the other child went for a fifteen-twenty minute walk. B.R. stayed behind in the house with K.J. at K.J.'s request. K.J. told B.R. that he wanted to play a game and told her to kneel down in front of him while he remained on the sofa. B.R. reported that K.J. pointed to his genital area and asked her to kiss between his legs because he had a boo-boo and it hurt. K.J. tried to

push B.R.'s head down between his legs several times, placing his hand on the back of her head. B.R. tried to resist. K.J. then carried B.R. upstairs to his bedroom and repeated his request. K.J. again tried to push B.R.'s head down between his legs several times. B.R. was fully clothed and K.J. was wearing short pants during the incident. Both upstairs and downstairs, B.R. asked K.J. to stop and began crying because he would not. K.J. told B.R. that the game was a secret and began to cry until B.R. promised him that she would not tell. K.J. then took a checkers game from the bedroom and carried it downstairs. When K.J.'s wife returned, K.J. and B.R. were playing checkers on the living room floor. B.R. told no one about the incident until three months later.

Schock testified that there was no skin-to-skin contact between K.J.'s genitalia and B.R., but that there was contact with his pants. B.R., however, testified that she was able to keep her face from his pants. Following the incident, there was no ongoing social contact between K.J. and B.R. K.J. denied the allegations against him and also presented the testimony of his uncle, a Monsignor, who testified that he never witnessed mistreatment by K.J. of children. The Monsignor lived next door to K.J., had almost daily conversations with him, and infrequently had breakfast with him.

Based upon these findings of fact, the hearing officer, finding the testimony of B.R. and Ms. Schock to be credible, determined that the Department presented substantial evidence that the indicated report of child abuse was accurate. One issue that the hearing officer was forced to resolve was whether a sexual assault occurred where it was unclear whether there was any actual contact between B.R.'s face and K.J.'s groin area. The hearing officer concluded that K.J.'s act of forcibly moving B.R.'s head with his hand towards his groin with a request that she kiss it was an attempt to involve B.R. in a sexual act, thus creating an imminent risk of sexual abuse.

■ After the hearing officer's Adjudication and Recommendation was adopted by BHA and affirmed by the Secretary, K.J. filed the present appeal with this Court. Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether legal error has been committed, or whether constitutional rights have been violated. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa. Cmwlth.1995). K.J. questions (1) whether the "substantial evidence" test, used by the hearing officer to determine whether the report of child abuse is accurate, is a constitutionally sufficient test given the seriousness of the proceedings; (2) in the alternative, whether there was substantial evidence to support the hearing officer's findings of fact and conclusions of law; and (3) whether the acts attributed to K.J. fall within the statutory definition of child abuse.

■ K.J. first argues that the seriousness of the charges against him and the consequences of his inclusion on the central register for child abusers renders the substantial evidence standard used by the hearing officer inadequate to protect his rights. K.J. argues that because the proceedings are allegedly quasi-criminal, threatening to deprive him of his property interests, including his reputation, the hearing officer should have used a "clear and convincing" standard of proof. In support, K.J. cites, among other things, a footnote from a 1991 decision of our Supreme Court in *J.S. v. Department of Public Welfare*, 528 Pa. 243, 248 n. 2, 596 A.2d 1114, 1116 n. 2 (1991), in which the Court stated:

> Although the Appellant did not question the standard of proof required by the Appellee [DPW] in order to maintain the indicated report [of child abuse], this Court is quite troubled by the use of any standard less than requiring clear and convincing evidence. Even though the

statute requires substantial evidence, it is quite possible that such a standard does not adequately protect the rights of the accused given the nature of these proceedings. See *Santosky v. Kramer,* 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599] (1982). However, since the issue has not been raised, we will defer consideration until such time as it is properly briefed and argued.

■ Although the concerns voiced by our Supreme Court in this dictum have logic and strength, like the appellant in *J.S.,* K.J. has failed to properly preserve the issue of the appropriate standard of evidence. K.J. failed to raise the issue before any proceeding at the agency level and has set forth the argument for the first time in this appeal. Our case law is unwavering that when a party fails to raise an issue, even one of a constitutional dimension, in an agency proceeding, the issue is waived and cannot be considered for the first time in a judicial appeal. *S.T. v. Department of Public Welfare,* 681 A.2d 853 (Pa.Cmwlth.1996). Thus, as in *J.S.,* the issue must be deferred until it is properly preserved, raised, and argued before the Court.[1]

K.J. next argues that substantial evidence does not support a finding of child abuse or sexual abuse. K.J.'s argument is several fold and focuses upon the issue of whether CYS made an adequate investigation before filing the indicated report rather than upon the issue of whether the report is accurate. Ignoring the testimony presented by CYS at the hearing, which the hearing officer found credible and which clearly constitutes substantial evidence supporting the accuracy of the indicated report, K.J. argues, erroneously, that the indicated report should not have been filed because Ms. Schock only based the report on interviews of B.R. K.J. argues that the report was deficient because it was not based upon medical or psychological evidence regarding the participants and family members or any "in-depth" interviews with the family members of B.R. or interviews with the police. K.J. also incorrectly states that Ms. Schock did not interview him.

■ The issue regarding whether an indicated report of child abuse should be expunged or maintained is whether the report is accurate or not. See 23 Pa.C.S. § 6341. Nowhere does the Law provide that the indicated report *must* include all or any of the matters that K.J. argues were lacking in Ms. Schock's investigation. In fact, DPW's regulations provide that medical evidence is only one basis upon which an indicated report of child abuse may be based; an indicated report may also be based, as here, exclusively on the child protective service investigation. See 55 Pa.Code § 3490.4. Our scope of review is limited, in pertinent part, to whether substantial evidence supports the necessary findings of fact of the agency. Our review of the proceedings before the hearing officer demonstrates that substantial evidence, particularly in the form of the consistent testimony of B.R., fully supports the findings of fact, upon which the determination was made, that the indicated report of child abuse was accurate. K.J.'s

---

1. We note parenthetically, however, that since the Supreme Court's 1991 statement, the legislature amended (and consolidated) the Child Protective Services Law (Law), 23 Pa.C.S. §§ 6301–6385. It did not, however, amend the provisions regarding the standard of proof required of the county agency to support, at a hearing, the indicated report of child abuse. Under the current legislation, amended in 1994, 1995, and 1999, an indicated report of child abuse must be supported by substantial evidence that the abuse occurred. See 23 Pa.C.S. §§ 6303, 6341. Moreover, our Su-

preme Court has since *J.S.* at least twice reviewed constitutional claims regarding expunction proceedings before DPW but has not repeated the concerns stressed in footnote 2 of *J.S.* Indeed, in *A.Y. v. Department of Public Welfare,* 537 Pa. 116, 641 A.2d 1148 (1994), the Court discussed matters necessary for DPW to meet its burden of proving by *substantial evidence* its conclusion that child abuse has occurred. Therefore, DPW's decision in this case was made in accordance with the current state of the law.

argument is therefore wholly without merit.

K.J. also argues that the hearing officer erred by "refusing" to consider the character testimony offered by him. Specifically, K.J. argues that the testimony of the Monsignor was sufficient to "raise a reasonable doubt" as to whether K.J. committed the acts against B.R. This argument is completely without merit. A review of the hearing officer's Adjudication clearly demonstrates that the hearing officer did consider the testimony of the Monsignor, but simply found that it was not persuasive enough to rebut the factually direct, and credible, testimony of B.R. and Ms. Schock. The hearing officer specifically concluded that the Monsignor's evidence "did not raise a reasonable doubt to form the basis of an expunction." Adjudication, p. 7. The hearing officer was well within his authority to make such a finding. Weight and credibility of evidence are matters solely within the province of the fact finder. *Bedford County Children and Youth Services v. Department of Public Welfare*, 149 Pa.Cmwlth. 127, 613 A.2d 48 (1992).

Finally, K.J. argues that the acts described by B.R. do not rise to the level of sexual abuse as defined by law or regulation because there was no physical touching between K.J.'s intimate parts and B.R. and because there was no exposure of intimate parts. Contrary to K.J.'s assertions, however, the regulations of the Public Welfare Code do not limit the definition of sexual abuse to a touching or exposure of intimate parts. Indeed, the Public Welfare Code defines sexual abuse or exploitation, in relevant part, as "[t]he employment, use, persuasion, inducement, enticement or coercion of a child to engage in … sexually explicit conduct." 55 Pa. Code § 3490.4. K.J.'s acts, as found by DPW, fall well within this definition.

Further, the Law defines child abuse as including "sexual abuse or sexual exploitation of a child under 18 years of age." 23 Pa. C .S. § 6303. "Sexual abuse or exploitation" is further defined in the Law as including "sexual assault … or other form of sexual exploitation of children." *Id.* K.J.'s acts, as found by DPW, clearly support the conclusion that K.J., at the very least, sexually exploited B.R. DPW therefore correctly concluded that the indicated report of child abuse was in accordance with the Law.

Accordingly, the final administrative order of DPW is affirmed.

### ORDER

AND NOW, this 10th day of January, 2001, the order of the Pennsylvania Department of Public Welfare in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I believe that K.J. has properly raised, and preserved, the issue of whether the clear and convincing evidence standard is the appropriate standard for meeting the burden of proof in proceedings to maintain or expunge an indicated report of child abuse under section 6341 of the Child Protective Services Law (Law).[1] After considering this issue, I conclude that the Secretary of the Department of Public Welfare (DPW) violated K.J.'s constitutional rights by utilizing a lesser standard. Thus, I would reverse DPW's order denying K.J.'s request to expunge an indicated report of child abuse.

### I. Waiver of the Issue

In *J.S. v. Department of Public Welfare*, 528 Pa. 243, 248 n. 2, 596 A.2d 1114, 1116 n. 2 (1991), our supreme court stated:

Although the Appellant did not question the standard … required by the Appellee in order to maintain the indicated report [of child abuse], this Court is quite troubled by the use of any standard less than requiring clear and con-

1. 23 Pa.C.S. § 6341.

vincing evidence. Even though the statute requires substantial evidence, it is quite possible that such a standard does not adequately protect the rights of the accused given the nature of these proceedings. *See Santosky v. Kramer*, 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599] (1982). However, since the issue has not been raised, we will defer consideration until such time as it is properly briefed and argued.

The majority here states that "the concerns voiced by our Supreme Court in this dictum have logic and strength, [but,] like the appellant in *J.S.*, K.J. has failed to properly preserve the issue of the appropriate standard of evidence. K.J. failed to raise the issue before any proceeding at the agency level and has set forth the argument for the first time in this appeal." [2] (Majority op. at 612.) However, under Pa. R.A.P. 1551(a)(1) and section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a), K.J. was not required to raise the issue before DPW, and K.J. is allowed to set forth the argument for the first time in this appeal.

Rule 1551(a)(1) states that "[n]o question shall be heard or considered by the [appellate] court which was not raised before the government unit *except* ... [q]uestions involving the *validity of a statute* ...." [3] Pa. R.A.P. 1551(a)(1) (emphasis added). Moreover, section 703(a) of the Administrative Agency Law specifically states that a "party who proceeded before a Commonwealth agency under the terms of a particular statute shall *not* be precluded from questioning the *validity of the statute* in the appeal...." 2 Pa.C.S. § 703(a) (emphasis added).

Here, K.J. proceeded before DPW under the terms of the Law, and the question raised by K.J. is whether the provisions of the Law purportedly setting forth the standard for the burden of proof in proceedings to maintain or expunge an indicated report of child abuse are valid. Because this is a question involving the validity of a statute, the matter is *not* waived simply because it was not raised before DPW. Thus, unlike the majority, I will address the issue.

## II. Statutory Construction

### A. Burdens of Proof

In *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citation omitted), the U.S. Supreme Court stated:

> The function of a [burden] of proof, as that concept is embodied in the Due Process Clause and in the realm of fact-finding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

**2.** The majority cites *S.T. v. Department of Public Welfare*, 681 A.2d 853 (Pa.Cmwlth.1996), *appeal denied*, 547 Pa. 747, 690 A.2d 1165 (1997), for the proposition that "when a party fails to raise an issue, even one of a constitutional dimension, in an agency proceeding, the issue is waived and cannot be considered for the first time in a judicial appeal." (Majority op. at 612.) However, this is not the holding in *S.T.* In that case, we held that the appellant waived a particular issue because the appellant did not raise it in his petition for review to this court. Here, K.J., unlike the appellant in *S.T.*, raised the issue in his petition for review. (*See* Petition for Review, para. E(3).)

**3.** The rationale for the exception in Pa. R.A.P. 1551(a)(1) is set forth in *Barbour–Knight v. Civil Service Commission of City of Philadelphia*, 703 A.2d 572 (Pa.Cmwlth.1997), *appeal denied*, 555 Pa. 746, 725 A.2d 1223 (1998). In *Barbour–Knight*, this court explained that administrative agencies, like DPW here, do not possess the authority to pass upon the validity of acts of the General Assembly. Thus, where a party fails to raise such a validity challenge before an administrative agency, it is *not* waived. *Barbour–Knight*.

The court explained that the evolution of this area of the law has produced three burdens to satisfy the needs of due process in different types of cases. *Id.* In a typical civil case involving a monetary dispute between private parties, where the litigants share the risk of error in roughly equal fashion, the plaintiff's burden of proof is a mere preponderance of the evidence. *Id.* In a criminal case, where the interests of the defendant are much greater, our society imposes almost the entire risk of error upon itself, requiring proof beyond a reasonable doubt. *Id.* In cases where the defendant runs the risk of having his reputation tarnished erroneously or where the proceedings threaten the individual involved with stigma, an intermediate standard of clear and convincing evidence is used. *Id.; Santosky.*

### B. Statutory Language

The Law defines an "indicated report" as a child abuse report that is based on an investigation showing "substantial evidence" of the alleged abuse.[4] Section 6303(a) of the Law, 23 Pa.C.S. § 6303(a). The Law defines "substantial evidence" as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." *Id.*

I begin by pointing out that this statutory definition of "substantial evidence" does not state specifically which of the three burdens of proof is appropriate in a proceeding to "maintain or expunge" an indicated report of child abuse.[5] The definition merely states that, to maintain an indicated report, there must be substantial evidence, or, in other words, evidence that "outweighs" inconsistent evidence.[6] A preponderance of the evidence is sometimes described as evidence that is weighty enough to tip the scale in favor of a burdened party. *See Se–Ling Hosiery v. Margulies,* 364 Pa. 45, 70 A.2d 854 (1950). Clear and convincing evidence is weightier evidence, which tips the scale further in a burdened party's favor than does a mere preponderance of the evidence.[7] Beyond a reasonable doubt is the weightiest evidence, and it tips the scale the furthest and most convincingly when weighed against opposing evidence.

Because the Law is ambiguous with respect to the proper burden of proof to satisfy due process needs in an expunction proceeding, we must rely on sound principles of statutory construction to ascertain the intention of the General Assembly in this regard. First and foremost, we presume that the General Assembly does not intend to violate the United States Constitution or the Pennsylvania Constitution. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3). Thus, where a statute can be given two constructions, one of which will render it constitutional and the other unconstitution-

---

4. An indicated report of child abuse may be based on available medical evidence, a child protective service investigation or an admission by the perpetrator. Section 6303 of the Law, 23 Pa.C.S. § 6303.

5. To properly deny a request for expunction of an indicated report of child abuse, the county agency must prove by substantial evidence that child abuse has occurred. *See* 23 P.S. § 6341(c).

6. It is important to keep in mind that, whatever the burden of proof in a particular case, substantial evidence is the quantity of probative, credible and competent evidence that is sufficient to meet that burden.

7. In the case of *In re Trust Estate of LaRocca,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963) (quoting *Broida v. Travelers' Ins. Co.,* 316 Pa. 444, 175 A. 492 (1934)), our supreme court stated with regard to clear and convincing evidence:

> [That the] witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.... It is not necessary that the evidence · be uncontradicted ... provided it 'carries conviction to the mind' ... or carries 'a clear conviction of its truth....'

al, we must invoke the former construction. *Dolan v. Linton's Lunch,* 397 Pa. 114, 152 A.2d 887 (1959).

With these principles in mind, I conclude that the word "outweigh" in the statutory definition of "substantial evidence" refers to the clear and convincing burden of proof, and *not* the preponderance of the evidence standard because, only by adopting this conclusion can the Law protect a person's fundamental right to his or her reputation.[8] If I were to conclude that the General Assembly intended for the word "outweigh," as used in the Law, to refer to the lowest possible burden of proof, then I also would have to conclude that the General Assembly intended to deprive accused persons of a fundamental right without due process. As explained, I must presume that the legislature's intent was otherwise because, quite simply, where fundamental rights are involved, the lowest burden of proof does not suffice to afford due process. *Cf. Santosky* (holding that the clear and convincing standard provides appropriate due process in cases involving parental rights). Thus, to the extent that DPW applied a lesser burden of proof than the clear and convincing evidence standard in determining whether to maintain or expunge an indicated report, I conclude that DPW deprived K.J. of a fundamental right without due process and committed an error of law.[9] Although I recognize the need to protect children from abuse, and understand that this goal must zealously be pursued, I cannot accept a situation where we allow that zeal to deprive persons of their constitutionally protected rights.

8. Article I, section 1 of the Pennsylvania Constitution states that all persons have certain inherent and indefeasible rights, among which are those "of acquiring, possessing and protecting property and *reputation* ...." Pa. Const. art. I, § 1 (emphasis added). In addition, this court has held that reputation is a fundamental right "in the same class with life, liberty and property." *Pennsylvania Bar Association v. Commonwealth,* 147 Pa.Cmwlth. 351, 607 A.2d 850, 856 (1992).

9. I note that a person's fundamental interest in protecting his reputation is in danger under the Law even before DPW begins an expunction proceeding. Pursuant to the Law, a person with "reasonable cause to suspect" child abuse files a report. 23 Pa.C.S. §§ 6311 and 6312. A county caseworker investigates the report by interviewing designated persons. 23 Pa.C.S. § 6368; *see* 55 Pa.Code §§ 3490.55(d) and 3490.55(g). The investigating caseworker then, in effect, determines the credibility of those persons, the competency of their statements, the weight of the evidence and whether the weight is substantial enough to support an indicated report of child abuse. 23 Pa.C.S. § 6303. Where the investigating caseworker decides that a person has committed child abuse, an indicated report of child abuse is entered on the statewide child abuse register. 23 Pa.C.S. § 6338. The person named as a perpetrator, i.e., a person who has committed child abuse, has forty-five days to seek expunction of the report. 23 Pa.C.S. §§ 6303 and 6341(a)(2). In the meantime, DPW may release the information on the statewide register to many individuals and entities for various purposes. *See* 23 Pa.C.S. §§ 6336, 6338 and 6340.

Thus, the Law allows a person's name to be entered on the statewide register based solely on the investigating caseworker's determination that there is "substantial evidence" of child abuse. However, "substantial evidence" is that quantum of evidence sufficient to meet a particular burden of proof, and, as indicated above, the Law does not specifically set forth a burden of proof to guide the caseworker, generally an individual untrained in the law, in deciding whether a person has committed child abuse. Thus, the investigating caseworker makes a report of child abuse without applying any particular burden of proof.

It shocks my conscience that the Law would allow the investigating caseworker to render a *de facto* adjudication that is adverse to an individual's reputation *without* an independent adjudicator having had the opportunity to consider the investigator's evidence of child abuse in accordance with established procedures of due process. This is particularly so because unless, or until, the alleged abuser timely requests an expunction hearing, the names of the falsely accused may nevertheless be released to physicians, child advocates, courts, the General Assembly, the Attorney General, federal officials, county officials, law enforcement officials, the district attorney and others. Thus, by the time DPW orders the expunction of an indicated report, a person's reputation already may be tarnished erroneously.

Because, here, DPW violated K.J.'s constitutional right to due process, I would reverse.