# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia County Department :
of Human Services, :
     Petitioner :
         :
    v.    : No. 292 C.D. 2024
         : Argued: November 7, 2024
Department of Human Services, :
     Respondent :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER   FILED: July 2, 2025

  The Philadelphia County Department of Human Services (Agency) petitions for review of a final order of the Department of Human Services (Department), dated February 15, 2024, upholding an adjudication of the Department's Bureau of Hearings and Appeals (BHA), which adopted an Administrative Law Judge's (ALJ) Recommendation sustaining Intervenor J.R.'s (Mother) appeal from an indicated report of child abuse on the ChildLine Registry (Registry).[1]  Agency argues, among other things, that evidence of near-fatal opioid ingestion is sufficient to establish the

---

[1] "ChildLine, a unit within [] Department . . . , operates a statewide system for receiving indicated and actual reports of child abuse; refers the reports for investigation; and maintains the reports for reference." *In re S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014); *see also* 55 Pa. Code § 3490.4 (providing the definition of "ChildLine").  "The ChildLine Registry is maintained in accordance with the Child Protective Services Law, 23 Pa.C.S. §§ 6301-6386." *In re S.H.*, 96 A.3d at 450 n.2.

presumption of abuse under Section 6381(d) of the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6381(d), and the ALJ erred in refusing to apply that presumption. Department and Mother contend Agency was not entitled to application of the presumption because Agency did not establish, by substantial, credited evidence, that Mother failed to supervise the subject child (Child), that the incident was a non-accident, and that opioid ingestion is determinative of abuse. Upon review, we affirm.

I.     **BACKGROUND**

The facts are not in dispute. On April 12, 2022, Child, who was 20 months old, was receiving speech therapy in the basement of Mother's home, where both Mother and the speech therapist (Therapist) were present. During the therapy session, both Mother and Therapist saw Child place something in its mouth and appeared to begin choking on it. (Adjudication, Findings of Fact (FOF) ¶¶ 19, 28, 53, 56-57, 59-60.) Therapist told Mother to make Child sit while eating to avoid choking. (*Id.* ¶ 62.) Child was in the care of Therapist within 5 to 10 minutes of Child experiencing symptoms of distress in the middle of the therapy session. (*Id.* ¶¶ 53, 56.) Shortly after Child began experiencing symptoms, Therapist left the home and Mother sought medical attention for Child. (*Id.* ¶ 61.)

Child was taken to the hospital. (*Id.* ¶ 9.) Dr. Norrell Atkinson, the treating physician and a qualified expert in child abuse pediatrics, evaluated and treated Child at the hospital. (*Id.* ¶¶ 10-11.) During the hospital visit, Mother reported to Dr. Atkinson that the night before, Mother was packing for a trip and old pill bottles fell out of a piece of luggage and spilled on the ground. (*Id.* ¶ 16.) Child picked up an Ibuprofen, but Mother retrieved it from Child's mouth. (*Id.* ¶ 17.) Mother further

reported to Dr. Atkinson that she was in the basement with Child and Therapist when Child was believed to have picked up an unidentified object and began choking. (*Id.* ¶¶ 19, 28.) Mother further reported to Dr. Atkinson that Child began wheezing and turned colors, then Child became unresponsive and 911 was called. (*Id.* ¶ 20.)

Dr. Atkinson tested Child's urine and blood, and Child tested positive for fentanyl, norfentanyl (which is the metabolic breakdown of fentanyl), morphine, and codeine. (*Id.* ¶ 21.) Mother reported that Ibuprofen, cyclobenzaprine, gabapentin, morphine, and codeine were in the home. (*Id.* ¶ 22.) However, Dr. Atkinson determined that none of these medications would yield a positive result for fentanyl. (*Id.* ¶ 23.) Dr. Atkinson further noted that, although the time of the opioid ingestion could not be pinpointed, Child likely ingested the opioids that morning because opioids are fast acting and have a quick onset, resulting in signs of lethargy, tiredness, and difficulty breathing shortly after ingestion. (*Id.* ¶¶ 31-32.)

Dr. Atkinson determined that Child presented at the hospital with symptoms of unexplained opioid ingestion, was unresponsive, and having difficulty breathing. (*Id.* ¶ 13.) Child, as observed by Dr. Atkinson, was also bluish in color, had constrained pupils, and a low oxygen saturation. (*Id.* ¶ 14.) Child did not present at the hospital with any other injuries. (*Id.* ¶ 30.) Child was subsequently administered Narcan and the symptoms improved, with Child becoming more alert and breathing on its own. (*Id.* ¶ 15.) Dr. Atkinson certified Child's injuries as near fatal in accordance with the designation required under state law. (*Id.* ¶ 26.) Child was subsequently returned to Mother's care. (*Id.* ¶ 51.)

As a result of this incident, a caseworker from Agency (Caseworker) was assigned to investigate allegations of child abuse. (*Id.* ¶ 37.) Caseworker interviewed Mother, and, during the interview, Mother reported that while preparing

for a trip the night before the incident, old pill bottles fell out of a piece of luggage in the closet and spilled on the ground. (*Id.* ¶¶ 16, 39.) Mother further reported that she picked up all the pills visible on the ground, flushed the contents of the old pill bottles in the toilet, and threw the pill bottles away. (*Id.* ¶ 40.) Mother then gathered dirty clothes from the closet and took the pile of dirty clothes down to the basement to start a load of laundry. (*Id.* ¶ 41.) Mother told Caseworker that some of the spilled pills may have been mixed up in the dirty laundry that was gathered from the closet and taken to the basement. (*Id.* ¶ 42.) Mother also reported during the interview that she had a party in the home the weekend before the incident. (*Id.* ¶ 46.) Caseworker also interviewed Child's sibling and maternal aunt, who both live in the home, and Child's biological father, who was briefly present in the home on the day of the incident. (*Id.* ¶¶ 44-45.) Mother and Father were drug tested for opioids, which returned negative, and no illicit substances were located during the police search of the home. (*Id.* ¶¶ 49-50.)

Caseworker also interviewed Therapist. (*Id.* ¶ 44.) Child was in the care of Therapist for 5 to 10 minutes (concurrently with Mother) prior to Child becoming ill. (*Id.* ¶ 53.) Therapist reported, like Mother, that in the middle of the therapy session, Child placed something in its mouth. (*Id.* ¶¶ 56-57.) Therapist further reported that shortly after Child began experiencing symptoms of distress, Therapist left the home. (*Id.* ¶¶ 58-59, 61.)

As a result of Caseworker's investigation, Mother was indicated for child abuse because Child was in Mother's primary care at the time of the incident. (*Id.* ¶ 47.) However, Caseworker did not indicate Therapist in the report. (*Id.* ¶ 54.) Caseworker's report indicated Mother for "[c]ausing serious physical neglect of a child[,]" pursuant to Section 6303(b.1)(7) of the CPSL, under the subcategory of

4

"repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities," pursuant to Section 6303(a), 23 Pa.C.S. § 6303(a), (b.1)(7). (Reproduced Record (R.R.) at 6a.)

On June 8, 2022, Mother filed an administrative appeal of the indicated report of abuse with BHA, requesting that the indicated report be expunged from the Registry. (R.R. at 3a-18a.) BHA granted the request for administrative review, and the ALJ held a hearing, where Caseworker and Dr. Atkinson testified on behalf of Agency. (*Id*. at 32a-33a.) Neither Mother nor Therapist testified.

At the beginning of the hearing, Agency attempted to invoke the presumption of child abuse under Section 6381(b). (FOF ¶ 4.) Mother objected on lack of notice and due process grounds, asserting that, because the burden shifts to Mother once the presumption is invoked, Mother has been unable to prepare a challenge to the presumption. (*Id*. ¶ 5.) Agency indicated that it believed notice was provided. (*Id*. ¶ 6.) However, the ALJ reviewed Agency's unified pre-filing and determined that notice was not provided, and, as such, sustained Mother's objection. (*Id*. ¶ 8.) During closing arguments, Agency again raised the presumption to preserve the issue for reconsideration. (*Id*. ¶ 64.) Neither party participated in post-trial briefing; however, letter "briefs" were filed. (*Id*. ¶¶ 64-69.)

In the Adjudication, the ALJ reasoned that Agency's choice not to provide an offer of proof after the ALJ sustained Mother's objection to application of the presumption, and Agency's decision to only raise the presumption again at closing arguments, rendered the issue inadequately preserved for appeal. (Adjudication, R.R. at 45a-46a.)[2] The ALJ determined that Agency had not met its burden establishing that Mother had engaged in child abuse and recommended that the

---

[2] The Adjudication is not separately paginated; thus, we will refer to the page of the Reproduced Record on which it appears.

indicated report be expunged. (*Id.* at 47a.) The ALJ reasoned, based on the testimony of both Caseworker and Dr. Atkinson, that the information Mother provided during Caseworker's investigation and to Dr. Atkinson at the hospital coincided, and concluded that "[t]he medical report [issued by Dr. Atkinson] included the same account of the incident that [Mother] provided to the [Caseworker] during the investigation." (*Id*. at 46a.) The ALJ further reasoned that, while the presumption may be self-executing, the presumption only stands if it is proven. (*Id*. at 45a.) The ALJ concluded:

> [Agency's] evidence falls short of demonstrating a causal link between the [Mother's] conduct or lack thereof and the injuries of . . . [C]hild. The record does not support a conclusion that [Mother] knew or should have known of a danger posed to [C]hild, or that she disregarded any warning signs of injury or inappropriately acted when it became clear . . .[C]hild was in distress. The record does not support a conclusion that the [Mother] left . . . [C]hild unattended on any occasion.
>
> As such, [Agency] did not present substantial evidence that it is correctly maintaining an indicated report in the [] Registry regarding allegations against [Mother].

(*Id.* at 47a.)

On August 15, 2023, BHA adopted the ALJ's recommendation sustaining the administrative appeal and directing expunction of the indicated report. (*Id.* at 30a.) Agency requested reconsideration of BHA's decision, which was granted by Department. (*Id*. at 48a-53a.) On February 15, 2024, Department issued the final order upholding BHA's decision. (*Id*. at 54a.) Agency petitioned this Court for review.

## II. PARTIES' ARGUMENTS

### A. Agency's Arguments

Agency first contends, citing our Supreme Court's decision in *In re L.Z.*, 111 A.3d 1164, 1185 (Pa. 2015), that Section 6381(d) of the CPSL was enacted to address the problem in child abuse cases involving children arriving at the hospital with serious physical injuries and the entirely implausible explanations proffered by parents or responsible persons for the child's injuries. (Agency's Brief (Br.) at 20.) Agency asserts that, while child welfare agencies can easily prove the existence of child abuse, they cannot easily ascertain which parent or responsible person is responsible for the child abuse and, as such, the presumption was enacted to allow agencies to assign responsibility. (*Id.*)

Therefore, Agency explains, the Supreme Court "'emphasize[d] that, when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child whether they actually inflict the injury or failed in their duty to protect the child.'" (*Id.* at 21 (citing *L.Z.*, 111 A.3d at 1185).) Agency contends the presumption is satisfied as they proffered evidence of an injury to child that "would not ordinarily be sustained but for the acts or omissions of the parent," and it is up to the parent to rebut that presumption. (Agency's Br. at 21). Additionally, citing our decision in *E.M. v. Department of Human Services*, 191 A.3d 44 (Pa. Cmwlth. 2018), and our sister court's decision in *In the Interest of G.R.*, 282 A.3d 376 (Pa. Super. 2022), Agency asserts, that in cases where the parent does not testify, the parent or caregiver's claims are outside the scope of the record and do not constitute rebuttal evidence. Agency acknowledges, however, that the evaluation of the validity of the

7

presumption and any rebuttal evidence from a parent or responsible person rests in the sole discretion of the factfinder. (Agency's Br. at 22.)

Agency next argues that the application of the presumption depends on the nature of the injury, rather than a causal link between the injury and an act or omission of a parent or responsible person. (*Id.* at 23.) Citing Justice Wecht's concurrence in *In the Interest of N.B.-A.*, 224 A.3d 661, 679 (Pa. 2020), Agency asserts that "it is the character or nature of the abuse that determines the applicability of the presumption and not evidence [of] an act or omission of the parent or caregiver. Hence, common childhood injuries are not subject to the presumption, but abusive-type injuries are subject to it." (Agency's Br. at 23.)

Agency further asserts that because this Court has not yet addressed whether a child's unexplained, near-fatal ingestion of opioids or other substances is an "abusive-type injury that is subject to the presumption," this Court should look to the Superior Court for guidance. (*Id.* at 24.) Specifically, Agency cites *In re A.S.* (Pa. Super., No. 2178 EDA 2020, filed May 28, 2021), and *In re B.E.* (Pa. Super., No. 505 EDA 2023, filed October 3, 2023),[3] for the proposition that near-fatal fentanyl ingestion is subject to the presumption. (Agency's Br. at 24) Agency argues that under this line of cases, because Child ingested a near-fatal amount of fentanyl, and none of the medications Mother said were in the home would yield a positive result for fentanyl, Agency established that "near-fatal ingestion of fentanyl and other substances is an abusive-type injury that is subject to the presumption." (*Id.* at 25.)

---

[3] Similar to unreported memorandum opinions of this Court, unpublished non-precedential memorandum decisions of the Superior Court may be cited for their persuasive value. Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b).

8

Agency also argues that it did not waive the presumption under Section 6381(d) of the CPSL because it was only required to raise the presumption "at" or "in" the administrative hearing, instead of prior to the hearing. (Agency's Br. at 16, 18.) Citing our decisions in *C.E. v. Department of Public Welfare*, 917 A.2d 348 (Pa. Cmwlth. 2007), and *J.W. v. Department of Public Welfare*, 9 A.3d 270 (Pa. Cmwlth. 2010), Agency asserts that, the application of the presumption is waived only if the moving party does not raise the presumption at the hearing. Agency further contends, according to the Superior Court's holding in *In the Interest of La.-Ra. W.*, 266 A.3d 1071 (Pa. Super. 2021), the presumption is self-executing. (Agency's Br. at 26-27.) Agency asserts that because it was sufficient to raise the presumption at the beginning of the hearing, it was error for the ALJ to sustain Mother's objection and to refuse to apply the presumption. (*Id*. at 27-29.)

In its final argument, Agency contends that the ALJ's preclusion of the application of the presumption based on untimeliness amounts to "an excessive and draconian remedy" that effectively results in a dismissal. (*Id*. at 30.) Agency asserts that because there is no procedural rule, statutory mandate, or case law indicating that notice must be provided prior to seeking the presumption, it was error to preclude the presumption on these grounds. Again, citing our Supreme Court's decision in *L.Z.*, Agency claims that the presumption was enacted "to prove the identity of the perpetrator when the agency is not otherwise [] able to do so," and if the presumption is precluded, Agency will be unable to identify the perpetrator of the abuse, thus amounting to an effective dismissal the case. (*Id*. at 30.)

### B. Department's and Mother's Arguments

Department first argues that it was not error for the ALJ to decline to apply the presumption because Agency never established prima facie evidence of abuse

9

under Section 6381(d) of the CPSL. Department asserts that the presumption is precluded because Caseworker did not consider Therapist as a possible perpetrator under Section 6303 of the CPSL, 23 Pa.C.S. § 6303, and Therapist had direct contact with Child leading up to the incident. (Department's Brief (Br.) at 5-6.) Specifically, in recalling Caseworker's testimony during the hearing, Department asserts that Caseworker did not provide a legitimate reason for eliminating Therapist as a perpetrator because the same testimony was used to indicate Mother as an abuser. (*Id*. at 8-9.) Department asserts that not considering Therapist as a perpetrator "created a 'break' in the custodial chain associated with the prima facie presumption." (*Id*. at 9.)

Department next contends that there was no evidence presented by Agency indicating that the incident was anything but accidental. (*Id*. at 11.) Department asserts that "there is a lack of events to support *mens rea*, in addition to an overt act or omission on [Mother's] part that led to [C]hild's hospitalization." (*Id*.) Department asserts that, as in *J.M.K. v. Department of Human Services* (Pa. Cmwlth., No. 1590 C.D. 2019, filed October 23, 2020), a caregiver is not reckless for not perceiving that something is a risk of bodily injury to a child. (Department's Br. at 12.) Department also argues, citing *S.K. v. Department of Human Services*, 206 A.3d 644 (Pa. Cmwlth. 2020), that because Mother attempted to dispose of the pills after they spilled on the ground, threw away the pill bottles, and that two of the drugs in Child's system were types of drugs Mother admitted were spilled, Agency could not establish that Mother glaringly or obviously deviated from the standard of care and, thus, the incident should instead be considered an accident. (*Id*. at 15.)

Mother agrees with Department that our decision in *J.M.K.* is applicable here and that Agency failed to establish the requisite *mens rea* for the presumption to

10

apply. (Mother's Br. at 13-14.) Mother also relies on our decision in *S.H. v. Department of Human Services*, 228 A.3d 22 (Pa. Cmwlth. 2020), for the proposition that, where the record is devoid of evidence indicating that a parent made a conscious decision to disregard hazards that could cause bodily injury to a child, the agency cannot establish culpability for abuse. (*Id*. at 13-14.) According to Mother, Agency presented evidence, which BHA weighed and determined did not establish abuse. (*Id*. at 15.)

Mother also maintains that Agency never established serious physical abuse through a prolonged or repeated lack of supervision, which was the basis of the indicated report and necessary to trigger the presumption. (*Id.* at 10.) Mother, relying on *K.Y.M. v. Department of Human Services* (Pa. Cmwlth., No. 137 C.D. 2018, filed January 7, 2019), argues that cases involving findings of prolonged and repeated lack of supervision "involved evidence of significant lapses in parental supervision." (Mother's Br. at 10) Mother further asserts that because Agency presented no evidence showing that Child was unsupervised leading up to the incident, and conversely, that the record is clear that Child was with Mother and Therapist, there was no lack of supervision. (*Id*. at 11.) Mother asserts BHA correctly found that Agency "failed to meet its burden to show by substantial evidence that there was a 'repeated, prolonged, or egregious' failure to supervise [Child] that would constitute child abuse." (*Id*. at 12.)

Mother next argues that the ingestion of fentanyl is not categorically child abuse, and there is a lack of authority supporting same. (*Id.* at 16.) Mother asserts that, while Agency relies on Justice Wecht's concurrence in *N.B.-A.* for the proposition that ingestion of opioids is determinative of abuse, the majority opinion "reject[ed] the idea that certain categories of injuries could lead directly to a

11

presumption of abuse." (*Id*. at 16.) On this point, Mother concludes that, because the ALJ found Mother's account of the incident plausible and because the medical report confirmed that the accidental ingestion of pills was a plausible explanation, Department correctly found that the adjudication was supported by the record and, thus, the presumption was never triggered. (*Id*. at 19-20.)

Mother also distinguishes *A.S.* and *B.E.*, maintaining that Agency's reliance on this set of Superior Court cases is improper because these cases lack precedential value and contain dissimilar facts. (*Id*. at 17-18.) Mother asserts that *A.S.* is distinguishable because, unlike the instant matter, both parents in *A.S.* had an extensive history of drug abuse and no evidence was presented that the ingestion of drugs was accidental. (*Id*. at 18.) Mother also distinguishes *B.E.*, asserting that this case dealt with a mother's version of events leading to a child's injury that were not credible because medical evidence supported a finding of bodily harm and the mother's explanation did not comport with the injury to the child. (*Id*. at 19.) Mother concludes that Agency's reliance on these cases is misplaced given the contrasting factual backgrounds and evidence presented in each case.

Mother's final argument asserts that the failure of Agency to provide notice of its intent to invoke the presumption prior to the hearing amounted to a violation of Mother's due process rights. (*Id*. at 22.) Mother, like Agency, notes that this Court has never addressed the issue of notice under Section 6381(d) of the CPSL. However, because placement on the Registry "causes significant reputational and employment harms that implicate a high level of due process," "meaningful notice and the ability to prepare for and respond" is required under the due process framework. (*Id*. at 22-23.) Mother concludes that it was proper to object to Agency's attempted application of the presumption on lack of notice and due process

grounds and, therefore, the ALJ did not err in denying Agency's request to raise the presumption. (*Id*. at 24.)

## III.  DISCUSSION[4]

In instances of suspected child abuse, an indicated report of abuse is prepared by a caseworker and issued by a county child welfare agency or the Department, which is then entered into the Registry. *T.H. v. Dep't of Hum. Serv.*, 145 A.3d 1191, 1198 (Pa. Cmwlth. 2016). The CPSL mandates that an indicated report must be supported by substantial evidence. 23 Pa.C.S. § 6303(a).[5] Section 6303(a) states that substantial evidence of abuse may be established through "(i) [a]vailable medical evidence[,] (ii) [t]he child protective service investigation[, or] (iii) [a]n admission of the acts of abuse by the perpetrator." *Id*. In turn, with this statutory mandate in mind, our Supreme Court has defined an indicated report as follows:

---

[4] "Our [] review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence." *R.L. v. Dep't of Hum. Servs.*, 236 A.3d 1183, 1186 n.4 (Pa. Cmwlth. 2020) (citation omitted); *see also* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. "Where the issue is one of law, our standard of review is *de novo* and our scope of review is plenary." *J.F. v. Dep't of Hum. Servs.*, 204 A.3d 1042, 1045 n.3 (Pa. Cmwlth. 2019) (citing *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare*, 963 A.2d 1274, 1276 (Pa. 2009)). Where the issue is one of substantial evidence, "[o]ur [] review is limited, in pertinent part, to whether substantial evidence supports the necessary findings of fact of the agency." *K.J. v. Dep't of Pub. Welfare*, 767 A.2d 609, 612 (Pa. Cmwlth. 2001).

[5] The Department notes that BHA's Adjudication states "[t]he presumption of evidence standard is self-executing where [Agency's] evidence clearly and convincingly provided the requisite evidence under [S]ection 6381(d)," and that "[t]his is a harmless error and does not affect the outcome of the case . . ." (Department's Br. at 9 n.4.) We agree. Where a finder of fact applies the wrong standard, it is harmless error where those facts are not necessary for the ultimate legal determination. *See Ret. Bd. of Allegheny Cnty. v. Colville*, 852 A.2d 445, 451 n.12 (Pa. Cmwlth. 2004) ("even if discovery were to establish that the [factfinder] made factual findings that are not supported by the record [or substantial evidence], this merely would constitute harmless error where those findings would not be necessary for the legal determination").

An "indicated" report is one wherein the determination relies on [Department's] or the county agency's own assessment that their investigation revealed "substantial evidence of the alleged abuse by a perpetrator exists based on" available medical records, the child protective services investigation, or an "admission of the acts of abuse by the perpetrator."

*J.F. v. Dep't of Hum. Servs.*, 245 A.3d 658, 660 (Pa. 2021) (citation omitted).

In the context of child abuse proceedings, the CPSL defines substantial evidence as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a). The agency or Department "ha[s] the burden of proving, by substantial evidence, that its investigation revealed substantial evidence to register [an individual] as an indicated child abuser." *R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d 270, 280 (Pa. Cmwlth. 2016). Since "[t]he burden of proof in an expungement hearing is on the county agency to show, by substantial evidence, that the indicated report is accurate [], if it fails to meet that burden, the request for expungement will be granted." *R.W. v. Dep't of Hum. Servs.*, 128 A.3d 839, 843-44 (Pa. Cmwlth. 2015) (citation omitted).

Pursuant to Section 6381(d) of the CPSL, in expungement cases, an agency or Department may apply for an evidentiary presumption "that a parent or person responsible for the welfare of the child is the perpetrator of any alleged child abuse." *T.H.*, 145 A.3d at 1195. Section 6381(d) provides:

Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d).

Our Supreme Court has made clear that "evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption." *L.Z.*, 111 A.3d at 1185. To rebut this presumption, a "parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive." *Id*. "The evaluation of the validity of the presumption would then rest with the [factfinder] evaluating the credibility of the prima facie evidence presented by the [] agency and the rebuttal of the parent or responsible person." *Id*. (emphasis omitted).

On appeal, Agency contends that Department erred in upholding the Adjudication, asserting that near-fatal opioid ingestion is sufficient to establish a presumption of abuse under Section 6381(d) of the CPSL, and that prior notice of the presumption is not required, rendering the ALJ's decision to decline application of the presumption an error. However, we need not reach these issues because, under the facts as found by the ALJ, by which we are bound, Agency did not establish it was entitled to application of the presumption.

A.     **Substantial Evidence for the Indicated Report**

In the instant matter, Agency's investigation report listed the nature of the abuse or neglect as "serious physical neglect of a child" through "**repeated, prolonged, or egregious failure to supervise**" the child. (R.R. at 29a.) (emphasis added). Pursuant to Section 6303(b.1)(7) of the CPSL, child abuse is defined, in pertinent part, as "[c]ausing serious physical neglect of a child." 23 Pa.C.S. §

15

6303(b.1)(7). Additionally, under Section 6303(a) of the CPSL, serious physical neglect occurs when an individual commits "(1) [a] repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities[,] [or] (2) [t]he failure to provide a child with adequate essentials of life, including food, shelter or medical care." 23 Pa.C.S. § 6303(a).[6]

In *C.F. v. Department of Public Welfare*, 804 A.2d 755 (Pa. Cmwlth. 2002), we held that evidence establishing that a mother who left a 10-month-old child alone in a bedroom for 15 minutes, where the child subsequently died, did not support an indicated report of abuse. The caseworker's investigation observed that the home was neat and clean, and the family was supportive of each other, but nevertheless indicated the mother for child abuse. *Id*. at 756. The medical examiner's report concluded, however, that the child's death was accidental. *Id*. In reversing the Department, we reasoned that because the mother left the room to prepare the child's bottle, the child showed no signs of neglect, and the family home was kept neat and clean, viewing these circumstances together, there was no prolonged or repeated lack of supervision amounting to serious neglect under the CPSL. *Id*. at 760-61.

Additionally, in *Fayette County Children and Youth Services v. Department of Public Welfare* (Pa. Cmwlth., No. 310 C.D. 2008, filed August 11, 2008), slip op. at 7, we held that "[a]s defined by the [] [CPSL] . . . just because a caretaker leaves a child alone does not mean there was child abuse – there has to be **prolonged** lack of supervision." (italics in original) (emphasis added). In that case, the mother was

---

[6] Beyond citing the statutory sections of the CPSL applicable to "serious physical neglect" and "prolonged or repeated lack of supervision," Agency's Brief does not address the applicable standards for either type of conduct, nor is there any argument asserted on these issues. This oversight seems problematic given the type of abuse Mother allegedly engaged in as identified in the indicated report and BHA's Adjudication.

16

indicated for child abuse after her 4-month-old child burned itself on a space heater. *Id*. at 3. Mother claimed she left the child in a child carrier atop an infant rocker chair, which was a couple feet from the heater when she went downstairs to speak with a customer. *Id.* During the expungement hearing, the ALJ concluded that, although the mother's testimony was not totally credible and there were inconsistencies in the mother's story, this did not mean the mother committed child abuse because it was not reasonable to believe a child of that age could have extricated himself from the seat and fallen on the heater. *Id*. at 5-6. Thus, the ALJ recommended that the indicated report should be expunged, which Department adopted. *Id*. In affirming the Department's grant of a request for expungement, we determined that the 4-month-old child was not a victim of prolonged or repeated lack of supervision where evidence established that the child was left alone for 5 minutes, and no evidence was presented showing that the child was not cared for properly. *Id*. at 8.

Here, based upon the unchallenged findings of fact, we agree with Department that Agency did not meet its burden of establishing, by substantial evidence, that Child was injured as a result of Mother's "repeated, prolonged or egregious failure to supervise" Child, as was alleged in the indicated report. (R.R. at 6a.) When the incident occurred, Child was at home in the basement receiving speech therapy, where both Mother and Therapist were present. (FOF ¶¶ 19, 38, 56.) Approximately 5 to 10 minutes into the therapy session, Mother and Therapist noticed Child place something in its mouth and begin coughing, and shortly thereafter, Child became ill. (*Id*. ¶¶ 19-20, 53, 57-58, R.R. at 47a.) Once Child began experiencing symptoms, a family member splashed water on Child's face to see if it would respond, 911 was

17

called, and Child was taken to the hospital by ambulance. (*Id*. ¶¶ 20, 61, R.R. at 68a, 89a, Tr. at 35.)

Importantly, the ALJ found that although Caseworker testified Mother gave inconsistent accounts of what occurred, Mother's account of the incident that was provided to Caseworker during Agency's investigation was consistent with the medical report. (FOF ¶ 58.) Additionally, following the incident, Mother was drug tested for opioids, which returned negative, and no illicit substances were located during the police search of the home. (*Id*. ¶¶ 49-50.) Moreover, similar to *C.F.*, 804 A.2d 755, the ALJ credited the fact that "[t]he[re] was no testimony or reference that the home was unkept, evidence of residual effect of the prior week's party or that the home was otherwise in such disarray or a state that it is presumable that . . . [C]hild could be harmed." (R.R. at 46a.) Furthermore, Child was returned to Mother's care after the incident, and Child is not subject to any dependency actions. (FOF ¶¶ 51-52.)

In ruling that Agency did not meet the criteria to establish that Mother was the cause of the Child's injury, the ALJ found:

> There was no correlation where the [] [Mother's] conduct was inappropriate, negligent, reckless, intentional or to such degree that it had to be known that such conduct would cause harm to . . . [C]hild. The[re] was not testimony or evidence presented that [Mother] left . . . [C]hild alone once much less on a repeated basis.

(R.R. at 46a.) Moreover, as aptly concluded by the ALJ:

> [Agency's] evidence falls short of demonstrating a causal link between the [Mother's] conduct or lack thereof and the injuries of . . . [C]hild. The record does not support a conclusion that [Mother] knew or should have known of a danger posed to [C]hild, or that she disregarded any warning signs of injury or inappropriately acted when it became clear

18

> . . .[C]hild was in distress. The record does not support a conclusion that the [Mother] left . . . [C]hild unattended on any occasion.
>
> As such, the [Agency] did not present substantial evidence that it is correctly maintaining an indicated report in the ChildLine Registry regarding allegations against the [Mother].

(*Id.* at 47a.)

We agree. Considering the chain of events and the credited evidence, there are no facts in the record supporting Agency's contention that Mother engaged in a pattern of "repeated, prolonged or egregious failure to supervise" leading to Child's opioid ingestion. 23 Pa.C.S. § 6303(a).

In sum, the presumption does not apply here because there is no indication that an act or omission by Mother caused Child to ingest opioids. As Dr. Atkinson testified, symptoms related to opioid ingestion are fast acting and usually occur close in time to opioid ingestion. (Adjudication, FOF ¶¶ 31-32.) Mother and Therapist were with Child when they both saw Child place something in its mouth and, within 5 to 10 minutes, Child began experiencing symptoms and became ill. (*Id*. ¶¶ 19, 28, 53, 56-57, 59-60.) To obtain the benefit of the presumption, Agency was required to establish that Child suffered abuse of such a nature as would ordinarily not be sustained or exist absent Mother's acts or omissions. Agency did not do so here and, as such, the burden never shifted to Mother. To hold otherwise would ignore the express limiting language included in the text of the statute.

Accordingly, given the credited evidence, we discern no error or abuse of Department's discretion in refusing to apply the presumption in a case, such as this, where Agency did not establish, by substantial evidence, that Mother intentionally, knowingly or recklessly engaged in conduct that would result in serious physical neglect of Child, 23 Pa.C.S. § 6303(b.1), or that the injury sustained here "would

ordinarily not be sustained or exist except by reason of the acts or omissions of" Mother, 23 Pa.C.S. § 6381(d).

## IV.    CONCLUSION

For the foregoing reasons, we affirm Department's final order upholding BHA's adjudication sustaining Mother's administrative appeal and directing expunction of the indicated report of child abuse from the Registry.[7]

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[7] In light of our decision, we need not confront the notice requirements applicable to a presumption of abuse under Section 6381(d) of the CPSL or address the parties' arguments with regard to whether Agency waived the presumption.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia County Department     :
of Human Services,     :
                 Petitioner     :
    :
          v.     :   No. 292 C.D. 2024
    :
Department of Human Services,     :
             Respondent     :

# **O R D E R**

**NOW**, July 2, 2025, the Order of the Department of Human Services, dated February 15, 2024, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia County Department    :
of Human Services,    :
          Petitioner    :
    :
     v.    :    No. 292 C.D. 2024
    :    Argued:  November 7, 2024
Department of Human Services,    :
          Respondent    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## _OPINION NOT REPORTED_

**DISSENTING OPINION BY**
**JUDGE DUMAS**                     **FILED:  July 2, 2025**

I respectfully dissent.  The Philadelphia County Department of Human Services (Agency) was entitled to the Section 6381(d) of the Child Protective Services Law (CPSL) evidentiary presumption because Child's near-fatal ingestion of fentanyl was abuse that would not ordinarily occur but for J.R.'s (Mother) acts or omissions.  *See* 23 Pa.C.S. § 6381(d).[1]  The Administrative Law Judge (ALJ) erred by misapplying the presumption.

The CPSL protects children from abuse.  23 Pa.C.S. § 6302.  To protect children from abuse, the CPSL establishes a rebuttable presumption of "child abuse" when a child has suffered abuse that could not occur but for the parent's acts or omissions.  *Id.* § 6381(d).  "Child abuse" includes "causing serious physical neglect

---

[1] Section 6381(d) of the CPSL follows: "Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child."  23 Pa.C.S. § 6381(d).

of a child," which is relevantly defined as a "repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities." *Id.* § 6303(b.1)(7). The disjunctive "or" means a single egregious failure to supervise may constitute child abuse when that failure involves leaving deadly narcotics accessible to a toddler. *See id.* "Child abuse" also includes injuring a child through a failure to act or creating a reasonable likelihood of bodily injury through a failure to act. *Id.* § 6303(b.1)(1), (5).[2]

The Agency properly invoked the Section 6381(d) presumption.[3] In my view, the presumption is self-executing as nothing in Section 6381 requires additional action before the Agency can invoke the presumption. *See id.* § 6381; *see also In re La.-Ra. W.*, 266 A.3d 1071, 1081 (Pa. Super. 2021).[4] Nevertheless, even if the presumption is not self-executing, the Agency timely invoked it in this case. *Cf. C.E. v. Dep't of Pub. Welfare*, 917 A.2d 348, 356 (Pa. Cmwlth. 2007); *J.W. v. Dep't of Pub. Welfare*, 9 A.3d 270, 272 (Pa. Cmwlth. 2010), *abrogated on other grounds by In re L.Z.*, 111 A.3d 1164, 1181 (Pa. 2015).

---

[2] Specifically, Section 6303(b.1)(1) states "causing bodily injury to a child through any recent act or failure to act" and Section 6303(b.1)(5) states "creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(1), (5) (citation modified).

[3] *Cf. In re A.S.* (Pa. Super., No. 2178 EDA 2020, filed May 28, 2021), 2021 WL 2287455, at *2 (resolving an agency's invocation of the presumption because the child had ingested fentanyl); *In re B.E.* (Pa. Super., No. 505 EDA 2023, filed Oct. 3, 2023), 2023 WL 6441352, at *6 (affirming the application of the presumption after the child ingested a near fatal dose of fentanyl). I may cite to Superior Court decisions for their persuasive value. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018); *see also* Pa.R.A.P. 126.

[4] The *La.-Ra. W.* Court suggested that the presumption is self-executing when the caregivers were given the opportunity to present rebuttal evidence. *La.-Ra. W.*, 266 A.3d at 1081 (agreeing with the agency "that the presumption is self-executing where [the agency's] evidence clearly and convincingly provided the requisite elements under section 6381(d) and where [the parents] were given the opportunity to present rebuttal evidence through expert witnesses"). Respectfully, the statutory language contains no such qualifiers. The Superior Court probably intended to mean that the caregivers did not rebut the presumption.

Turning to the record, I am reluctant to second guess the ALJ. However, the caseworker, Sharina Johnson, testified that Mother did not present any prescriptions for the pills spilled on the ground one day before Child's near-fatal fentanyl overdose—pills that Mother flushed down the toilet. *See* ALJ Op., 8/15/23, at Findings of Fact, ¶¶ 39-40; Notes of Testimony (N.T.), 12/5/22, at 31, 51. Child almost swallowed a pill that was on the ground before Mother removed it from Child's mouth, which reflects her knowledge of the risk to Child. *See* ALJ Op., at Findings of Fact ¶ 17. Johnson also testified that Mother did not know everyone at the party held the weekend prior and never provided contact information for any invitees. *See id.* ¶ 46. While the speech therapist was present, Mother, as parent, bore primary responsibility as the person who knew about the spilled pills and the party. The therapist had no apparent knowledge of Mother's prior conduct.

In my view, this record clearly and convincingly evidences Mother's insufficient actions or omissions. Mother knew of the risk after she removed a pill from Child's mouth. The record does not reflect any subsequent search by Mother for any remaining pills prior to Child's overdose. *Someone* irresponsibly left fentanyl on the floor for Child to ingest while in Mother's care.

Child's near-fatal ingestion of fentanyl is "child abuse" triggering the Section 6381(d) presumption. Child's overdose is *prima facie* evidence of an injury that could not occur but for Mother's acts or omissions. Mother's insufficient cleanup efforts, whether from the spillage or the party, resulted in Child ingesting a near fatal dose. Specifically, either (1) Mother egregiously failed to supervise Child; (2) Mother recently failed to act by not cleaning up all of the spilled pills or insufficient after-party cleaning; or (3) Mother created a reasonable likelihood of injuring Child through her actions or omissions. Mother knew or should have known

LAD - 3

of the risk of injury to Child and disregarded it.[5]

In rejecting the presumption, the ALJ reasoned that the *Agency's* "*evidence* falls short of demonstrating a causal link between [Mother's] conduct or lack thereof and" Child's injuries. ALJ Op. at 16 (emphasis added). In my view, the *Agency* need not prove a causal link between Mother's conduct and Child's injury because the presumption *itself* establishes that very connection. *See In re N.B.-A.*, 224 A.3d 661, 674 (Pa. 2020) (stating "evidence that a child has suffered child abuse *of such a nature as would ordinarily not be sustained or exist except by reason of the acts of omissions of the parent* . . . shall constitute *prima facie* evidence of child abuse *by the parent*" (first emphasis in original)). The Legislature created this presumption precisely to relieve agencies from the burden of proving causation in cases when a child suffers injuries that ordinarily would not occur absent a parent's acts or omissions. *See id.* The ALJ's apparent misapplication of the presumption justifies vacating and remanding to have the ALJ correctly apply the law.[6]

I respectfully dissent, as I cannot support a result that contradicts the CPSL's purpose of protecting children from abuse.

**LORI A. DUMAS, Judge**

---

[5] The majority discusses *C.F. v. Department of Public Welfare*, 804 A.2d 755 (Pa. Cmwlth. 2002), and *Fayette County Children and Youth Services v. Department of Public Welfare* (Pa. Cmwlth., No. 310 C.D. 2008, filed Aug. 11, 2008) (*Fayette*), 2008 WL 9404950. *C.F.* involved a mother's brief absence. *C.F.*, 804 A.2d at 756. *Fayette* addressed a parent leaving the child to speak with a customer. *Fayette*, 2008 WL 9404950, at *1. Unlike those cases, which involve brief absences, Mother's own conduct created the conditions that almost led to Child's death.

[6] The ALJ also appears to suggest that because multiple adults had access to Child, the presumption could not apply. ALJ Op. at 15-16. Any suggestion conflating *access* to Child with Mother's *conduct* has no basis in law. *See* 23 Pa.C.S. § 6381.